Dallas v. McNutt.

---

GEORGE DALLAS, Appellant, v. E. L. McNUTT et al.

Division One, March 5, 1923.

1. **CONVEYANCE: Delivery.** Delivery is an essential element of the validity of a deed. To pass the title, the grantor must not only part with all dominion over the instrument, but he must do so with the intention that it take effect and pass the title as a present transfer.

2. ———: ———: **Reservation in the Instrument.** A voluntary deed to a grandson, reciting that it is "expressly understood and agreed" that the grantor "shall hold this deed and enjoy the property as long as said first party shall live" and that when the grantor shall "have died, then and in that event this deed·shall be delivered by whosoever shall get hold of same" to the grantee named, "and by him recorded for his sole and only use, the said property then and there to vest in him absolutely and in fee simple," unrecorded, and undelivered to said grantee until after the grantor's death, was invalid, and conveyed no estate to the grantee.

3. ———: ———: **To Third Party.** Where a husband and wife joined in a deed conveying the wife's lands, the fact that the husband took the deed to a bank, left it with its officer and directed him that at their deaths the deed was to be turned over to the grantee, did not constitute a delivery of the deed, the wife not being present and having no previous knowledge of her husband's intention to leave the deed with the bank and not having learned thereafter that he had made such disposition of it, and no course of dealing being shown from which an implied authorization for him to act for her in the matter of its delivery could be inferred. Such facts did not manifest the wife's intention that the deed was to take effect as a present transfer.

4. ———: ———: **Valuable Improvements by Grantee.** The fact that the grantee made valuable improvements on the house and lot, with the consent of the grantor, his grandmother, who occupied certain rooms of the house, the grantee occupying the others, does not justify an inference that both, or either, considered that he had a present interest in the premises, in the face of her deed containing a recital that it was not to be delivered until her death, for she evidently thought that the deed would take effect at her death and operate as a valid conveyance. Nor could said improvements, unaccompanied by any act of commission or omission on her part, give rise to an estoppel.

Appeal from Cass Circuit Court.—*Hon. Ewing Cockrell,* Judge.

AFFIRMED.

*Geo. R. Chamberlin, W. D. Summers* and *G. M. Summers* for appellant.

(1) The burden rests upon the defendant to show non-delivery of the deed. The presumption is that deed

Dallas v. McNutt.

was delivered. McFarland v. Brown, 193 S. W. 800; Peters v. Berkemier, 184 Mo. 393, 402; Allen v. De-Groodt, 105 Mo. 449; Berkley v. Berkley, 175 S. W. 623; White v. Pollock, 117 Mo. 467; Appleman v. Appleman, 140 Mo. 309; Hall v. Hall, 98 Mo. App. 108; Meredith v. Meredith, 229 S. W. 179; 1 Devlin on Real Estate (3 Ed.) secs. 262, 275, 276. (2) The reservation clause in this deed does not make it testamentary. Winfrey v. Ledford, 177 S. W. 302; Meridith v. Meridith, 229 S. W. 179; Sneathen v. Sneathen, 104 Mo. 209; Priest v. McFarland, 171 S. W. 62; Mason v. Mason, 231 S. W. 972; McAlister v. Pritchard, 230 S. W. 66; Willis v. Robinson, 237 S. W. 1030; 1 Devlin on Real Estate (3 Ed.) secs. 309a, 333-a. (3) Grantor cannot deed property to grantee and then, in the same deed, set aside the conveyance by reservations. 2 Devlin on Real Estate (3 Ed.) sec. 857; Crites v. Crites, 225 S. W. 990; McAlister v. Pritchard, 230 S. W. 66; Willis v. Robinson, 237 S. W. 1030; Nations v. Spense, 235 S. W. 1066; Scott v. Scott, 95 Mo. 318; Patterson v. Camden, 25 Mo. 22; Meridith v. Meridith, 229 S. W. 179. (4) The word "title" may be used synonymously with ownership or right of possession, depending on the context. Winfrey v. Ledford, 177 S. W. 302. (5) Acceptance after death of grantor dates back to time of delivery to bank and renders it a transfer of that date. Williams v. Latham, 113 Mo. 209; Sneathen v. Sneathen, 104 Mo. 209. (6) Delivery of a deed is evidenced both by words and acts. Sneathen v. Sneathen, 104 Mo. 209.

*J. S. Brierly* and *T. N. Hayes* for respondents.

(1) The deed from Civilla J. Denton and husband to Dobbins, through which plaintiff claims, specifically recites that grantors were to hold the deed and the real estate so long as grantors or either of them should live; and that after the death of grantors whoever should get possession of the deed should deliver it to said Dobbins who should record it, and that the property should then

and there vest in said Dobbins. This shows that no present interest or estate was conveyed or intended to be conveyed, and that the deed in no manner was to take effect until after the death of grantors; also, shows that grantors retained control over the deed so long as each should live. This makes the instrument testamentary in form and null and void. · Hohenstreet v. Segelhorst, 227 S. W. 80; Griffin v. Miller, 188 Mo. 327; Murphy v. Gabbert, 166 Mo. 596; Givens v. Ott, 222 Mo. 395; Griffin v. McIntosh, 176 Mo. 392; Miller v. Holt, 68 Mo. 584; Goodale v. Evans, 263 Mo. 219; Aldridge v. Aldridge, 202 Mo. 565; Terry v. Glover, 235 Mo. 544. (2) By its terms the deed provides that it should not take effect and should not be delivered until after the death of grantors, and this being the case, even though it had been delivered, it being void as a deed and being testamentary in character, and not having the formalities of execution required, is invalid as a will. Terry v. Glover, 235 Mo. 544; Murphy v. Gabbert, 166 Mo. 596; Griffin v. McIntosh, 176 Mo. 398; Aldridge v. Aldridge, 202 Mo. 565; Givens v. Ott, 222 Mo. 395; Hohenstreet v. Segelhorst, 227 S. W. 80; Griffin v. Miller, 188 Mo. 327. (3) An instrument of writing, to be good as a deed, must pass a present interest in the property attempted to be conveyed; and where it takes effect and becomes operative alone upon the death of the grantor, it is testamentary in character, and insufficient as a deed. Murphy v. Gabbert, 166 Mo. 596; Miller v. Holt, 68 Mo. 584; 1 Devlin on Deeds, sec. 309; Pinkham v. Pinkham, 55 Neb. 729; Turner v. Scott, 51 Pa. 126; Leaver v. Gauss, 62 Iowa, 314; Donald v. Nesbit, 89 Ga. 290; Bigley v. Souvey, 45 Mich. 370; Nichols v. Emery, 109 Cal. 323; Conrad v. Douglas, 59 Minn. 498; White v. Hopkins, 80 Ga. 154. (4) The mere act of Civilla J. Denton's husband placing the deed in the bank and his statement to witness Knorpp, all out of the presence of Civilla, cannot be held as a waiver of the expressed provisions contained in the deed that it should not be delivered nor have any force or ef-

fect until after her death.  Griffin v. McIntosh, 176 Mo. 392; Griffin v. Miller, 188 Mo. 327.

RAGLAND, J.—This proceeding was originally commenced before a justice of the peace as an action for rent against the defendant, McNutt, as tenant.  It was certified by the justice to the circuit court on the ground that the title to real estate was involved.  The real estate giving rise to the controversy, a dwelling house and an acre of ground in Pleasant Hill, Missouri, was formerly owned by Civilla J. Denton, who died about January 1, 1920.  In the circuit court her administrator and heirs were made parties defendant, and permitted to file answers and cross-bills.  The cross-bill of the administrator alleged, among other things, that Civilla J. Denton at the time of her death was the owner in fee simple of the real estate just referred to; that she died intestate; that he as her administrator had inventoried said real estate as the property of her estate; that the personal estate being insufficient to pay the debts allowed against the estate, the probate court had ordered him to take charge of said real estate and rent it; and that in compliance with such order he had leased it to the defendant, McNutt.  It also alleged that whatever right, title or interest the plaintiff claimed in said real estate was derived through a certain so-called deed, purporting to have been executed by Civilla J. Denton and Joseph Denton, her husband, to C. W. Dobbins, on January 10, 1905, and recorded January 14, 1920; that said pretended deed transferred no title because: (1) it was testamentary in character; (2) it was never delivered; and (3) it operated as a fraud upon creditors.  The cross-bill further alleged that by reason of said pretended deed being of record the administrator was unable to sell the real estate to pay debts pursuant to an order of the probate court, and that it constituted a cloud upon the title.  The prayer was, that the alleged deed be cancelled and for naught held, and that the rights of the respective parties in and to said real estate be defined and adjudged.

The other defendants adopted the answer and cross-bill of their co-defendant, the administrator.

By his reply plaintiff put in issue the allegations of the cross-bill with respect to infirmities of the deed from Mrs. Denton to Dobbins.

On January 10, 1905, Mrs. Denton owned the property in controversy; her husband, Joseph Denton, also owned several residence properties in Pleasant Hill. A daughter, Mrs. Elmore, and two grandchildren, Dobbins and a Mrs. Hawkins, were their ostensible heirs. On the date just mentioned they signed and acknowledged three deeds; one to Dobbins, purporting to convey Mrs. Denton's property; one to Mrs. Elmore; and one to Mrs. Hawkins, the last two purporting to convey the property belonging to Joseph Denton. Within a short time thereafter Joseph Denton appeared at one of the banks in Pleasant Hill with the three deeds. These he handed to an officer of the bank, and in that connection said that "at the death of him and his wife the deeds were to be turned over to the people they belonged to."

The deed to Dobbins, the one involved here, was a general warranty deed, conforming in all respects to the form of such deeds in general use in this State, except that immediately following the description of the property this clause was inserted:

"It being expressly understood and agreed, that first parties or either of them shall hold this deed and enjoy the above described property as long as either of the said first parties shall live. When both of said first parties have died, then in that event this deed shall be delivered, by whomever shall get hold of same, to said C. W. Dobbins, and by him recorded for his sole and only use, the said property then and there to vest in him the C. W. Dobbins, absolutely and in fee simple."

Soon after the incident of the signing, acknowledging and depositing of the deeds as just related, Dobbins took up residence in a part of the house on the lot described in the deed to him, his grandfather and grandmother occupying the other part. He continued to live

there until 1918, with the exception of two years during which time he was away from Pleasant Hill. During his occupancy of the premises he "put a roof on the house, made some sidewalk, built a kitchen, . . . a wood and coal house and some more sidewalk," all at his own expense. As to why he made these improvements Dobbins testified: "They [his grandfather and grandmother] both told me to go ahead and improve the property in whatever way I wanted to; I wanted to put in things, improve the place; I spent four or five hundred dollars; they told me there was no other way for me to get it but I didn't do it." At the time of the making of the improvements Dobbins knew that a deed purporting to convey the premises to him had been placed in the bank; how he acquired that knowledge or whether he obtained any other information with respect to the deed or its contents does not appear. He did not see the deed itself until after his grandmother's death. Prior to the death of his grandfather, which occurred in 1908, Dobbins did not pay any rent; after that time he paid rent regularly to his grandmother during the remainder of his occupancy of the property. She remained in possession of it until her death. Soon after Mrs. Denton's death Dobbins went to the bank and requested the deed; it was turned over to him and he at once filed it for record. Knowing that the validity of the deed was challenged, Dobbins, on the same date that he placed it of record, sold, and conveyed by quitclaim deed, his interest in the premises to the plaintiff. The latter purchased with full knowledge of the impending controversy.

The foregoing embraces all the facts disclosed by the evidence having any bearing on what we regard as the controlling question in the case, namely, whether there was a delivery of the deed from Mrs. Denton to Dobbins.

The trial court found the issues for defendants and gave judgment accordingly. From such judgment plaintiff appeals.

One of the essential requisites of the validity

of a deed, so as to pass the title, is delivery. On the question of whether in a given case there has been a delivery the intention of the grantor is the controlling element. Delivery connotes that the grantor not only parts with all dominion and control over the instrument, but that he does so with the intention that it take effect and pass the title as a present transfer. Such intention may be manifested by acts, or by words, or by both words and acts. [Sneathen v. Sneathen, 104 Mo. 201; White v. Pollock, 117 Mo. 467.]

So far as Mrs. Denton is concerned the only manifestation of her intention, touching the delivery and the taking effect of the deed, is found in the language of the instrument itself heretofore set out. No paraphrase or analysis can make its meaning plainer. According to it the possession of the deed, as well as the enjoyment of the property, was to be retained by the grantors, or one of them, during their joint lives and by the survivor during the remainder of his or her life; after the death of the survivor the deed was to be delivered, "by whomever should get hold of same," to the grantee, "*the said property then and there to vest in him.*"

The provision is very similar to the one considered in Griffin v. McIntosh, 176 Mo. 392, 397. In construing the deed in that case it was said:

"It is beyond conjecture that Collon McIntosh and his wife executed this instrument with the intention of conferring, at some time, the title to the lands therein described on his son, James, and looking to this condition it would appear to be equally clear that the time when the title was to vest in the son was after the death of the father and mother.

"In the absence of this condition written into the deed, the instrument could have had no effect to convey the title until it was delivered. The grantor and his scrivener were evidently under the impression that the deed could be delivered after the death of the parents to the son, but of course delivery is essential to make a deed effectual and it must occur in the lifetime of the

grantor. . . . While courts seek diligently for the intention of the maker of an instrument, it cannot give effect to that intention if it contravenes some inflexible principle of law.''

Notwithstanding the plain stipulation that the deed was to be retained in the possession of one of the grantors as long as either was alive, it may be that the depositing of the instrument in the bank by Joseph Denton, with the instruction to turn it over to the grantee after the death of both himself and his wife, constituted a delivery as to him. [Sneathen v. Sneathen, supra.] But his wife was not present at the time he left the deed with the bank, and, so far as the evidence discloses, she had no previous knowledge of his intention to do so, nor did she afterward learn that he had made such disposition of the instrument. There was no course of dealing, or other fact or circumstance, shown by the evidence from which an implied authorization for him to act for her in the matter of the delivery could be inferred. His acts therefore did not effect delivery as to her. ''One joint grantor unauthorized by his co-grantors cannot make a valid delivery as to them.'' [18 C. J. p. 212, par. 117; Meeks v. Stilwell, 54 Ohio St. 541; Cannon v. Cannon, 26 N. J. Eq. 316.]

There was nothing in the conduct of the parties tending to show that they tacitly treated the deed as having been delivered, or as having effected a transfer of some right or interest in the property therein described. The fact that Dobbins made valuable improvements on the land with the consent of his grandmother does not in our opinion justify the inference that both, or either, considered that he had then a present interest in the premises. She evidently thought that the deed would take effect at her death and then operate as a valid conveyance of the property, and he probably shared in the same view. So far as she is concerned there is not a particle of evidence, direct or inferential, tending to show that she at any time changed her intention as expressed in the deed with reference to its delivery. Nor does it

appear that she said anything or did anything, by way of omission or commission, that could give rise to an estoppel.

For the reason herein expressed the instrument· through which the plaintiff claims to have derived title was ineffectual as a conveyance. It follows that the judgment below should be affirmed. It is so ordered. All concur.