CARL DICKSON, Appellant, v. DEMPSEY MADDOX, GERTRUDE MADDOX and EMMA A. DICKSON.—48 S. W. (2d) 873.

Division Two, April 8, 1932.

*Roy Hamlin* for appellant.

54

*John D. Taylor* for respondents.

COOLEY, C.—This suit was brought in the Circuit Court of Chariton County to set aside a deed or deeds made by Willis G. Dickson and his wife, Emma A. Dickson, conveying lands in said county to Dempsey Maddox and his wife Gertrude and their bodily heirs. Judgment was for the defendants and plaintiff appeals. Plaintiff is the grandson and sole heir of Willis G. Dickson, who was dead when suit was brought, and claims as such heir. Defendant Emma A. Dickson is the widow of said Willis. Defendant Maddox is her son by a former marriage and defendant Gertrude Maddox is his wife.

There were two counts in the petition, the first asking cancellation of a deed of Willis G. Dickson and Emma A. Dickson to Dempsey and Gertrude Maddox and their bodily heirs and the second asking

cancellation of a deed of Emma A. Dickson and Willis G. Dickson to the same grantees. The two counts are similar except for the description of the lands involved and the following differences: In the deed described in the first count Willis G. Dickson is named first as grantor and the deed contains the following condition; "that Mrs. Emma A. Dickson, wife of Willis G. Dickson, shall have full control and possession of the above conveyed property during her natural life;" while in the deed described in the second count Emma A. Dickson is named first as grantor and the condition is that she shall retain (instead of have) full control and possession during her natural life. The court found the issues, in general terms, for the defendants and against plaintiff and that defendants were the owners of the lands "described in plaintiff's petition," but in describing the lands the judgment describes only those mentioned in the first count. Mr. and Mrs. Dickson each owned lands in Chariton County and each at the same time executed deeds conveying portions of their respective lands to Dempsey and Gertrude Maddox and other deeds conveying other portions to other grantees, as will more fully appear hereafter. The evidence does not show whether the lands described in the second count belonged to Willis G. or to Emma A. Dickson. From the facts shown we think it likely that they belonged to Mrs. Dickson, in which event the plaintiff would have no interest therein, which may account for the obscurity of the record on that point. No point is made on this appeal that the judgment is not responsive to the pleadings and evidence and we shall give that matter no further attention.

The case hinges upon the question whether or not there was a delivery of the deed. If so, the judgment was for the right parties, otherwise not. In appellant's assignment of errors there are certain complaints of alleged error in the admission and rejection of evidence. These are not briefed nor elsewhere mentioned in appellant's statement, brief and printed argument and will be treated as abandoned. [See McCollum v. Watts, 319 Mo. 769, 5 S. W. (2d) 420, 426; Moffett Bros. & Andrews Comm. Co. v. Kent (Mo.), 5 S. W. (2d) 395, 403.] There were allegations in the petition to the effect that Willis G. Dickson, at the time of making the deeds, was mentally weak and easily influenced because of old age and sickness and that the execution by him of the deeds was procured by undue influence and fraud on the part of defendants, but there was no evidence offered to support those charges and they were abandoned at the trial.

The deeds in question were executed May 27, 1926. Mr. Dickson is referred to as being then an old man. His exact age is not shown. Plaintiff, his grandson, was then twenty-three years old. Emma A. was Dickson's second wife. By his first marriage he had three children, two of whom died in infancy. The other, a son, grew up, married and died many years ago leaving one son, the plaintiff. Mrs.

Dickson had been married twice previously, having one son, William Colson, by her first marriage and two, Dempsey and Eldon Maddox, by the second. There was no issue of the marriage of Willis G. and Emma A. Dickson. For a time after the death of appellant's father he and his mother had lived in the home of Mr. Dickson but some years prior to the events here involved had moved to Hannibal. It does not appear when or why they left the Dickson home or whether or not there existed any estrangement between Dickson and plaintiff. About 1921, Mr. Dickson had suffered a partial paralysis after which time, although able to get about, he did no active work. His stepsons, Dempsey and Eldon Maddox, thereafter farmed part, perhaps all, of his lands. They did not pay rent and it is not shown whether they farmed it for him or for themselves prior to 1927.

On May 27, 1926, Mr. Dickson, then sick and confined to bed, sent for two men, Mr. Jaeger, a justice of the peace, and Mr. Laker, a notary public "connected with" the Bank of Dalton. Upon their arrival he requested them to prepare certain deeds for himself and his wife and a will for himself. Seven deeds and the will were prepared and executed. Two of the deeds were those above mentioned to Dempsey Maddox and wife. Two others conveyed lands in Chariton County, part of which was owned by Mr. Dickson and part, as nearly as we can tell from the imperfect showing made, by Mrs. Dickson, to Eldon Maddox and wife and their bodily heirs. The others conveyed lands of Mr. Dickson's in Carroll County to collateral relatives of his and lands of Mrs. Dickson in Kansas to her son William Colson.

Jaeger and Laker were called as witnesses by plaintiff. Laker testified that Mr. Dickson told him and Jaeger how he wanted the deeds made; that he and his wife had agreed with each other that they would each make deeds conveying their respective lands as in the deeds specified and that the deeds were made according to Mr. Dickson's directions and as he said had been agreed between him and his wife; that the seven deeds, when prepared, were read to Mr. and Mrs. Dickson; that both stated said instruments to be what they wanted and both then signed and acknowledged them; that the will likewise was prepared at Mr. Dickson's directions, read to and executed by him. The preparation and execution of said instruments occupied some five hours and by the time they were completed Mr. Dickson had become very weary, of which more anon.

When all of the above instruments had been executed they were delivered by Dickson or at his direction to Laker who placed them in an envelope upon which he, Laker, wrote the following: "Deeds of Willis G. Dickson and Emma A. Dickson. To be recorded after the death of either party *or surrendered upon their joint and personal recall* and are herewith left in the custody of H. J. Laker,

Dalton, Missouri." (Italics ours.) Laker testified that said endorsement was read to Mr. and Mrs. Dickson and that Dickson required "someone to attach his signature because he was weary." That was done, he making his mark thereto, and Mrs. Dickson signed the endorsement. The signing of said endorsement ended the transactions of that day. The deeds and will were kept by Laker until Mr. Dickson's death, over two years later, whereupon, within a few days, they were delivered to the respective grantees.

Laker testified on direct examination, when asked from whom he got the directions which he had written on the envelope: "Mr. Dickson gave me the directions." But his testimony on cross-examination, detailing the attending circumstances and what was actually said by Mr. Dickson, throws a different light on that subject. We quote: "Q. Now then, Mr. Laker, I find on the back of this envelope here, marked Plaintiff's Exhibit 1, this statement: 'Or surrendered upon their joint and personal recall.' Did Mr. Dickson ever say those words to you? A. I wouldn't say he said those exact words. That interpretation there was naturally from what he wished to have done.

"Q. Isn't this what he said; after he told you he wanted you to take these deeds and keep them until one or the other died, didn't he make the remark, not to you but to Mrs. Dickson: 'You can't draw them down or take them out,' . . . ? A. Yes, sir.

"Q. And Mrs. Dickson said: 'You can't either,' . . . ? A. Yes, sir.

"Q. And isn't that all that was said about recall? A. Yes, sir.

"Q. And when you wrote, 'or upon their joint and personal recall,' you wrote that because of remarks of Mr. and Mrs. Dickson? A. Yes, sir.

"Q. And because of no other instruction? A. Yes, sir.

"Q. You say Mr. Dickson at the time he signed this was a very weary man? A. Yes, sir.

"Q. You had been there for some five hours or more? A. We had.

"Q. In fact, he was in such a condition you didn't feel it was safe to disturb him? A. We certainly did not.

"Q. You couldn't say Mr. Dickson gave any particular attention to that reading? A. No, only he was there and it was read to him.

"Q. But he was a very weary and tired man? A. Yes, sir.

"Q. You knew Mr. Dickson very well? A. I did.

"Q. And transacted business for him many years? A. Yes, sir.

"Q. Mr. Dickson was a man of very limited education? A. I would say so.

"Q. Mrs. Dickson was a woman of limited education, wasn't she, and is? It is your opinion, based on your knowledge? A. Yes, sir."

Laker further testified that neither Mr. or Mrs. Dickson at any time made any suggestion to him that they might under any circumstances want to recall the deeds.

Mr. Jaeger could not remember what, if any, directions were given concerning the deeds and the endorsement on the envelope, or whether or not they were read to Mr. Dickson. His testimony throws no light on the question of delivery. He corroborated Laker's testimony that Mr. Dickson was very tired by the time the signing was finished.

Dickson recovered from the illness from which he suffered when the deeds were executed, became able to go about, and lived until August, 1928. At and prior to May 27, 1926, Dempsey Maddox was and had been farming the lands of Mr. Dickson described in the deed made to Eldon Maddox and wife, and Eldon was and had been farming the land of Dickson described in the deed to Dempsey and wife. In the early spring of 1927, before crop time (about March) Dickson caused them to exchange lands and put each in possession and in complete charge of the land described in his respective deed. He did not thereafter demand or receive any rent or other compensation for the use of the lands from either. Eldon, called as a witness by defendants, testified that Mr. Dickson told Dempsey to take charge of the land "deeded to him;" that he said to Dempsey: "I have deeded you this land and I want you to take it;" that thereafter Dempsey was in charge of that land, farmed it and retained the profits; that similarly, he himself was placed and remained in possession of the lands deeded to him and his wife. By other witnesses it was shown that early in 1927 the two stepsons did exchange places, each taking over and thereafter operating the land described in his respective deed. Dempsey built some fences on his land.

In the spring of 1927 one Tom Allen wanted to rent from Mr. Dickson a small tract of the land described in the deed to Eldon. Before letting him have it Mr. Dickson asked Eldon if he, Eldon, could "tend" all of his land, and upon being informed by Eldon that the latter could not, Dickson asked him if it would be all right to let Allen have part of it. Eldon consented and thereupon Dickson let Allen have it. Nothing was raised because of high water and no rent was paid that year but Allen was permitted to farm the same ground in 1928 and Eldon received the rent. In the spring of 1928, Dickson told Allen he had deeded the land to Eldon and it was Eldon's land.

Dorsey Beeler, a brother of Mrs. Dickson, testified that he had known Mr. Dickson many years and that they were intimate friends; that Mr. Dickson told him of making the deeds about the time they were executed "and he told me before;" that after the deeds had been executed "he told me he gave the land on the southwest there to Eldon and on the northeast to Dempsey and land in Carroll County

to Clifford Dickson," a nephew. (The land "on the southwest" was that deeded to Eldon, that on the northeast to Dempsey.) Beeler further testified that about May, 1927, Dickson told him that he had his business all arranged and wanted to be buried on a certain lot; that he had deeded the lands above referred to, to Eldon and Dempsey respectively and "had given each one possession, he had put them to work on it." On cross-examination he testified "he (Dickson) said he put them on their lands," referring to Eldon and Dempsey and the above mentioned lands.

Defendants called Mrs. Dickson as a witness and offered to prove by her, among other things, that at the time of the execution of the deeds nothing was said by her about a power to recall the deeds; that it was her purpose to deliver the deeds absolutely; that the words "or surrendered upon their joint and personal recall" were written on the envelope by Mr. Laker without her authorization; that she did not then or subsequently understand she had power to withdraw or recall the deeds from Laker's possession; and that Dempsey Maddox and his wife, about March, 1927, took possession of the lands described in the deed to them with her consent. Upon plaintiff's objecting to Mrs. Dickson's competency the court refused to permit her to testify. Plaintiff offered to introduce the will of Willis G. Dickson but defendant objected and it was excluded. The record filed here does not show what were its contents. There is no intimation in the record that it purported to dispose of the real estate here involved.

It seems to be conceded that by the various deeds executed May 27, 1926, if valid, Dickson divested himself of all his lands.

The italicized portion of the above mentioned endorsement on the envelope in which the deeds were placed when executed furnishes the bone of contention in the question of delivery. If there were nothing else by which to determine the grantor's intention it would seem clear that he did not mean unreservedly to surrender dominion over the deeds but that he and his wife reserved the right to recall them by their mutual consent. Conceding for the purpose of the case that if such was Mr. Dickson's intention and understanding there was no valid delivery and that therefore the deed in question did not pass title, we think that the evidence warranted the trial court's conclusion that the grantor did not thus intend to reserve dominion over the deed and did not understand that he was doing so but that he intended and made an irrevocable delivery.

The parties hereto do not materially disagree as to the law relative to delivery. Both cite Sneathen v. Sneathen, 104 Mo. 201, 16 S. W. 497, wherein (104 Mo. l. c. 209) the governing principle is thus stated:

■ "Delivery of a deed is, of course, an essential element of a valid transfer of title to real estate, and it must take place during the life

of the grantor; for a deed cannot be made to perform the functions of a will. But the delivery need not be to the grantee in person. A deed delivered by the grantor to a third person to be delivered to the grantee, and by such third person delivered to the grantee, will constitute a good delivery, though the grantor is dead at the date of the last delivery; for the delivery takes effect by relation as of the date when first made to the third person. ■ In such cases it should appear that the grantor parted with all dominion and control over the instrument, intending it to take effect and pass the title as a present transfer. This intention may be manifested by acts, or by words, or by both words and acts.''

The foregoing is quoted with approval in Van Huff v. Wagner, 315 Mo. 917, 923, 287 S. W. 1038, in which case a number of our prior decisions are reviewed and the court further says:

''The cases establish beyond question that the delivery of the deed to a third person for delivery to the grantee after the grantor's death is valid provided the grantor releases his dominion over the instrument. He must intend to divest himself of title and control at the time.''

The controlling element is the grantor's intention and it is well settled that such intent may be shown by words or acts or by both. [Sneathen v. Sneathen, supra; Dallas v. McNutt, 297 Mo. 535, 249 S. W. 35; Meredith v. Meredith, 287 Mo. 250, 229 S. W. 179.]

■ ■ Appellant contends that the endorsement on the envelope, which appellant's evidence shows was read to Dickson and signed for him at his request, is conclusive, there being no showing of fraud in procuring such signature. We are not so persuaded. ''Parol evidence is, as a general rule, admissible for the purpose of showing that by reason of a mistake a written instrument does not truly express the intion of the parties.'' [22 C. J. p. 1224, sec. 1632.] Written and signed directions from the grantor were not necessary to the validity of the delivery. The oral directions to Laker were sufficient had he written nothing on the envelope. Nothing was said to Laker indicating that Mr. or Mrs. Dickson had in mind the thought that they might desire to or could recall the deed. ■ That was Laker's interpretation of the above related conversation between Mr. and Mrs. Dickson. Granting that the conversation was susceptible of the interpretation put upon it by Laker and that if such interpretation was knowingly assented to and adopted by grantor as his final direction by authorizing his signature thereto it would be conclusive in appellant's favor, there is ample room for the belief that Mr. Dickson, sick and weary as he was, may not even have heard the reading of the endorsement understandingly, or if he did hear it that neither he or Mrs. Dickson understood the import of the portion referring to recall. They had said nothing about a possible recall or surrender to them of the deeds. Mr. Dickson's subsequent conduct in placing the gran-

tees in possession of the lands conveyed to them respectively by the deeds and his explicit declarations to the effect that he had deeded them said lands and that the lands belonged to them are inconsistent with the idea that he intended to retain or thought he· had retained dominion over the deeds.

It is suggested that Mrs. Dickson, one of the grantors, is not shown to have consented to an irrevocable delivery of the deeds to Laker for the grantees. Appellant ·cites Dallas v. McNutt, supra, in support of that suggestion. In that case the wife was the owner of the land. She and her husband executed a deed purporting to convey her land to a grandchild. On its face the deed provided that it as well as possession of the land should remain in the custody of the grantors as long as either lived and that when both were dead the deed should be delivered "by whomever shall get hold of same" to the named grantee. Later the husband took the deed to a bank and gave it to an officer thereof with· instructions to deliver it to the grantee upon the death of himself and wife. The deed was held void as to the wife because on its face testamentary in character and also upon the ground that as to her there was no delivery because there was no showing that the husband was authorized to act for her in ,making the delivery to the officer of the bank. But the opinion strongly intimates that, notwithstanding the· provision of the deed that it was to remain in the custody of the grantors while either lived, the delivery would have been good as to the husband.

In the instant case the land in controversy belonged to Mr. Dickson. It was not shown to have been homestead. He could have conveyed it without his wife's consent except her dower interest. We see no reason why the deed should not be held effective as to such interest as he individually could convey, assuming it was legally delivered so far as he was concerned, even though his wife did not consent to the delivery and would not be bound as to her interest. Mrs. Dickson is not complaining of the judgment.

The further suggestion is made by appellant in his reply brief that Dickson could not have "effectuated a delivery by placing Dempsey Maddox in possession of the land" because the deed gave Mrs. Dickson a life estate with the right of possession during her life. She may have consented and evidently did consent to Dempsey's possession. In any event the significance of Mr. Dickson's acts and words in placing Dempsey in possession lies, not in the legal effect thereof as between Dempsey and Mrs. Dickson, but in their probative value in determining Mr. Dickson's intent when he executed the deed and delivered it to Laker.

Much of the testimony as to Dickson's acts and declarations subsequent to the execution of the deeds came from witnesses who were doubtless sympathetic to defendants' cause. But it was not disputed and was not shaken on cross-examination. The testimony of

those witnesses bears on its face no inherent indicia of falsity. We cannot well do otherwise than accept it as true. So accepting it we think from all the facts and circumstances shown the judgment was for the right parties and it is affirmed. *Westhues* and *Fitzsimmons, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.