HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Corporation, (Plaintiff) Appellant,

v.

FARMINGTON AUCTION, INC., (Defendant) Respondent.

No. 30945.

St. Louis Court of Appeals.

Missouri.

April 17, 1962.

McClintock & Medley, E. L. McClintock, Jr., Flat River, for appellant.

Roberts & Roberts, J. Richard Roberts, Farmington, for respondent.

SAMUEL E. SEMPLE, Special Judge.

This is a lawsuit instituted by the plaintiff, Hartford Accident and Indemnity Company, to recover from defendant, Farmington Auction Company, Inc., for additional premiums on two public liability insurance policies issued by plaintiff to defendant. Plaintiff after giving defendant credit for advance premiums paid on said policies and after giving defendant credit for refunds in the total amount of $111.15 on two Workmen's Compensation policies, claimed defendant owed plaintiff a balance of $640.48. Defendant in its answer admitted that plaintiff issued to defendant the two liability policies but stated that the premiums due on the policies were paid in full and further stated that regardless of the provisions of said insurance policies an agreement was reached with plaintiff's general agent that the premiums would be based on wages paid employees other than officers and stockholders and that the premiums would not be based upon any wages paid to the officers or stockholders of the defendant. Defendant denied all other allegations in connection with plaintiff's claim. Defendant also had a counterclaim for $111.15 for refunds due on two Workmen's Compensation policies issued by plaintiff. The case was tried before a jury and resulted in a verdict for defendant on plaintiff's petition and for plaintiff on defendant's counterclaim. Judgment was rendered in accordance with the verdict. Plaintiff's motion to set aside the judgment for the defendant on plaintiff's case and enter judgment for plaintiff or in the alternative grant plaintiff a new trial was overruled, and thereafter plaintiff duly perfected its appeal to this Court. Defendant did not appeal from the adverse judgment on its counterclaim.

For convenience the appellant herein will be referred to as plaintiff and the respondent as defendant.

The basic dispute in this case is over the question of whether plaintiff was entitled to include the wages and compensation paid to defendant's six officers and shareholders as a part of defendant's total payroll in calculating the earned premiums on the two liability policies issued by plaintiff to defendant.

A summary of the evidence in the case is as follows: Early in February 1959, A. J. Babcock, president of the defendant corporation, while acting for and in behalf of the defendant, sought to purchase from one Ralph Keith of Ironton, Missouri, a local agent of plaintiff, a policy of insurance insuring defendant against claims under the Missouri Workmen's Compensation law. In making application for the policy, Ralph Keith wrote the state agent of plaintiff as follows:

"Feb. 9, 1959

"Dear Mr. Frauenhoffer:

" * * * Also, please issue a Workmen's Compensation policy for the Farmington Auction Co., Inc., Farmington, Missouri, located 2 miles North of Farmington on Highway 67. The estimated annual payroll is $7000.00 being $2600.00 for clerical and $4400.-00 for laborers working with stock. Livestock auctions are held once a week and the following named stockholders are to be excluded from the coverage: A. J. Babcock, Charles F. Sutton, C. L. Furry, E. E. Williams, Silas Dees and Ewell Buxton. The policy to be dated Feb. 7. 1959.

"Yours very truly,

"RALPH KEITH INSURANCE."

Plaintiff acting through its state agent thereafter issued and delivered to defendant its policy No. WH–236742 for the period 2/7/59 to 2/7/60 insuring defendant against claims under the Workmen's Compensation Act and which contained an endorsement excluding the six officers and stockholders of the defendant from coverage under said policy on the condition

that each of said officers and stockholders had filed a rejection of the Missouri Workmen's Compensation Law. The policy called for an advance premium predicated on the estimated annual payroll of $7,000 as set out in Keith's letter (which did not include the salaries of the officers and stockholders). The policy provided in substance that this was an estimated premium only and that upon termination of the policy the earned premium would be computed in accordance with the rules, rates, rating plans and premium applicable in accordance with the manuals in use by the company. The endorsement excluding the officers and shareholders of defendant from coverage under the policy resulted in the salaries and compensation paid to them being excluded from the company payroll in calculating the earned premium at the end of the policy period.

On February 12, 1959, Ralph Keith wrote the state agent of plaintiff asking as to what the premium would be for liability insurance for defendant. Plaintiff's state agent replied to the letter of Ralph Keith setting out the information in a schedule attached to the letter that a public liability policy specifying bodily injury limits of $5,000 per person, and $10,000 per accident would have an advance premium of $136.-04. The schedule attached to the letter reads as follows:

| Item 3 Divisions | Coverages | Premiums | Limits |
|---|---|---|---|
| | | | Coverage A |
| 1. Premises— | A–Bodily Injury | $ | $  5,000  person |
| Operations | B–Property Damage | $ | $ 10,000  accident |

| Divisions Description of Hazards | Code No. | Premium Bases | Rates Cov. A. | Advance Premiums Cov. A |
|---|---|---|---|---|
| Division  1. Premises— Operations | | (a)  Area  (Sq. Ft.) (b)  Frontage (c)  Remuneration | (a)  Per 100 Sq. Ft. of Area (b)  Per Linear Ft. (c)  Per $100 of Remuneration | |
| Livestock Sales Companies | 8280S | (c)  4,400 | 3.09 | 135.96 |
| Clerical Office | 3485 | (c)  2,600 | .003 | .08 |
| | | | | 136.04 |

Keith testified that when he received the letter with the attached schedule from plaintiff's state agent he gave the information to Mr. Babcock. He further testified over plaintiff's objection in effect that when the company sent him the rate schedule showing an estimated payroll of $7,000 as the basis for the advance premium he thought that the compensation of officers and stockholders of defendant would be excluded from defendant's payroll in calculating the earned premiums, the same as in the Workmen's Compensation policy, and told this to Babcock. Babcock also testified over plaintiff's objection in effect that he thought the compensation of the officers and stockholders was not to be included in the payroll of defendant in computing the earned premium on the liability policy. Keith and Babcock both testified

that they knew the advance premium was an estimate based on an estimated payroll of defendant and that the final earned premium would be calculated by audit of the actual payroll of defendant under the provisions of the policy. Keith stated that he did not request plaintiff to exclude the officers and stockholders from this liability policy.

On February 19, 1959, Keith wrote to plaintiff's state agent as follows:

"Mr. J. M. Frauenhoffer
"Lawton-Byrne-Bruner Ins.
  Agency Co.
"401 Pine Street
"St. Louis, Missouri

   "Re. Farmington Auction Co., Inc.
      "Farmington, Missouri

"Dear Mr. Frauenhoffer:

"With reference to your letter of February 16th, please issue a Public Liability Policy for the above, with $5,000/10,000 limits, and not to include Property Damage, with a resulting total premium of $136.04.

                    "Yours very truly,
                 "RALPH KEITH
                    INSURANCE."

Plaintiff then issued a Public Liability Policy No. MCS–216677 for the period from 2/19/59 to 2/19/60 and sent it to Ralph Keith who countersigned the policy and delivered it to defendant. The policy called for an advance premium of $136.04 computed on a premium base of an estimated $7,000 annual payroll and did not contain an endorsement excluding officers and stockholders from coverage, but on the contrary the policy in paragraph 1 of the insuring agreements defined the word "insured" as including the named insured (defendant) and also included any executive officer, director or stockholder while acting within the scope of his duties. The policy contained among others the following provisions:

"1. Premium: The premium bases and rates for the hazards described in the declarations are stated therein. Premium bases and rates for hazards not so described are those applicable in accordance with the manuals in use by the company.

"The advance premium stated in the declarations is an estimated premium only. Upon termination of this policy, the earned premium shall be computed in accordance with the company's rules rates, rating plans, premiums and minimum premiums applicable to this insurance. If the earned premium thus computed exceed the estimated advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured.

"When used as a premium basis:

 *    *    *    *    *    *
"(3) the word 'remuneration' means (a) the entire remuneration earned during the policy period by all employees of the named insured, other than drivers of teams or automobiles and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company, and subject with respect to each executive officer to a maximum and a minimum of $100 and $30 per week, and (b) the remuneration of each proprietor at a fixed amount of $3,600 per annum;
 *    *    *    *    *    *

"2. Inspection and Audit: The company shall be permitted to inspect the insured premises, operations and elevators and to examine and audit the insured's books and records at any time during the policy period and any extension thereof and within three years after the final termination of this policy, as far as they relate to the pre-

mium bases or the subject manner of this insurance."

Mr. Babcock testified to the effect that when the first liability policy was delivered he glanced at it but did not read all of its provisions and doubted very seriously if any one else connected with the defendant had read the policy.

In February, 1960, a new or renewal Workmen's Compensation Policy No. WH–244442 was issued by plaintiff and delivered to defendant covering the period from 2/7/60 to 2/7/61. This policy called for the same advance premium based on the $7,000 estimated payroll and contained the same provisions including the endorsement excluding the officers and stockholders from coverage as the original Workmen's Compensation policy issued by plaintiff to defendant.

In February 1960 a new or renewal Public Liability Policy No. MCS–219920 was issued by plaintiff and delivered to defendant covering the period from 2/19/60 to 2/19/61. This policy called for the same advance premium and contained the same pertinent provisions as the first liability policy that was issued by plaintiff to defendant.

After the expiration of the policy periods of the original Workmen's Compensation and Public Liability policies and after issuance of renewal policies an audit was made by plaintiff. According to the testimony of Eugene F. Rechtien, supervising auditor for plaintiff, the audit on liability policy No. MCS–216677 resulted in the computation of a total earned premium on said policy of $843.72 and after giving credit for the advance premium paid by defendant the net additional premium was $707.68. That in making this audit there was included in the payroll of the defendant the salaries of the six officers and stockholders of the company who were active in the conduct of the business. Plaintiff subsequently billed defendant for the additional premium and after a dispute ensued over the inclusion of the

salaries of the six officers and stockholders in computing the earned premium, defendant cancelled the renewal liability policy as well as the renewal Workmen's Compensation policy as of 7/1/60. That plaintiff made an audit covering the period the renewal policies were in effect. According to the testimony of Mr. Rechtien, the audit in connection with the renewal liability policy revealed that plaintiff was entitled to an earned premium of $179.99 and after giving credit for the advance premium of $136.04 paid by defendant the net additional premium due from defendant to plaintiff was $43.95. Mr. Rechtien further testified that the result of the audit of the original policy and the renewal policy up to the time it was cancelled revealed that there was due plaintiff from defendant the sum of $751.63 as additional earned premiums. Mr. Rechtien further testified that defendant was entitled to a credit in the sum of $111.15 as a refund on two Workmen's Compensation policies and that according to the audits and the plaintiff's records there was a balance due plaintiff by defendant of $640.48.

Defendant admitted that the audits were made and that they were made in conformance with the provisions of the policies. Plaintiff's records of the audits consisting of the auditors work sheets together with the audit summaries typed on regular printed forms, although marked as exhibits and referred to by witness Rechtien in his testimony, were not placed in evidence and were not specifically admitted by defendant.

Plaintiff assigns as error the trial court's action in overruling plaintiff's motion for a directed verdict at the close of all the evidence for the reason that the evidence conclusively established that the net amount due and owing plaintiff for additional premiums on the policies was $640.48 and that defendant failed to introduce evidence sufficient to justify a submission to the jury of its defense that regardless of the provisions of the insurance policies there was an agreement between plaintiff's agent Keith and defendant that the compensation of the offi-

cers and stockholders would be excluded from the payroll of defendant in calculating the earned premiums on the policies.

In considering the question of directing a verdict the law has been well stated in Coleman v. Jackson County, 349 Mo. 255, 160 S.W.2d 691, 1. c. 693:

"It is a generally accepted rule in this state that a verdict may not be directed in favor of the proponent, that is the party upon whom the law casts the final burden of proof. (Citing cases.) * * * If the opponent, that is the party not having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, and if the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned, and if such proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and such proof is unimpeached and uncontradicted, the proponent will be entitled to a peremptory instruction. This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass. (Citing cases.)"

■ In the instant case plaintiff carried the burden of proof to establish its claim for additional premiums and defendant had the burden to establish its defense. Therefore, for plaintiff to be entitled to a directed verdict, the trial court would have had to find that plaintiff established its claim as a matter of law with no question of fact remaining for the jury to consider and in addition would have had to find as a matter of law that defendant failed to establish its alleged affirmative defense.

We do not think that plaintiff proved its claim as a matter of law. Some of the basic facts to establish plaintiff's claim were the amounts of earned premiums due and owing plaintiff at the termination of each of the policies, the credits if any to which defendant was entitled, and the net amount due from defendant to plaintiff.

■ The only evidence offered to prove these essential facts was the oral testimony of plaintiff's witness Rechtien. Mr. Rechtien testified in substance that the audits of the two liability policies resulted in net additional earned premiums totaling $751.63 and that the audits of the two Workmen's Compensation policies resulted in defendant's being entitled to a refund in amount of $111.15 and that the net balance due plaintiff by defendant was $640.48. Although witness Rechtien referred to copies of the audit work sheets and they were marked as plaintiff's exhibits, the record does not show that they were ever admitted in evidence. A diligent search of the record does not reveal that the defendant either in its pleadings or by counsel in open court admitted the accuracy of the calculations involved in the audit or the correctness of the amount of the earned premiums as testified by Rechtien. It is very seldom that a trial court is justified in directing a verdict in favor of a party having the burden of proof when the case depends on oral testimony. Daly v. Schaefer, Mo.App., 331 S.W.2d 150, 155. It was for the jury to determine what amount if any was due plaintiff by defendant for additional earned premiums after allowing for all credits due defendant.

As we have concluded that plaintiff was not entitled to a directed verdict on its claim, it would appear that a consideration of the question of whether defendant failed to establish its defense as a matter of law is unnecessary. However, this question has a direct bearing on plaintiff's assignments of error in the giving and refusal of instructions and will therefore be considered.

■ It is well settled law that insurance is a matter of contract, and is gov-

erned by the rules applicable to contracts and that any claim or suit by either party to an insurance contract must be based on the policy as issued. Hall v. Missouri Insurance Co., Mo.App., 208 S.W.2d 830, 832. It is also a fundamental rule that whatever verbally transpires between contracting parties is superseded and merged in a subsequent written contract and this applies to written insurance policies issued by the insurer and accepted by the insured. Wright v. Great Eastern Casualty Co., Mo.App., 206 S.W. 428, 429; Bramble v. Kansas City Life Insurance Co., 349 Mo. 318, 160 S.W.2d 746, 752; Hall v. Missouri Insurance Co., supra. It has also been held that an insured has a reasonable time to accept or reject a policy after it is delivered and if he keeps it a reasonable length of time, he is deemed to have accepted it. Where the policy is kept by the insured an unreasonable length of time, he accepts it as a counter-offer even though he has not read it. Neuner v. Gove, Mo.App., 133 S.W.2d 689, 694, and cases therein cited.

Defendant attempts to avoid the application of the aforementioned rules in defending the case on the theory that the written liability policies issued by plaintiff to defendant differed from a previous oral understanding or agreement of the parties, and as the written policies did not express the prior parole agreement they were based on mistake and were void. Defendant cites the case of Stone v. Stone, Mo., 176 S.W.2d 464, 468, in support of this contention. We do not believe this case is in point as it dealt with the problem of whether a bid made at a foreclosure sale under a misapprehension of the terms of the sale, may be retracted without the consent of the trustee. The court held that because of the bidders mistake as to a material part of the terms of the sale that there was in effect no contract. The case did not involve any attempt to vary the terms of a written contract by prior parole agreements or understandings.

The defendant also cited Iowa-Missouri Walnut Co. v. Grahl, 237 Mo.App. 1093, 170 S.W.2d 437, which is not in point. In that case it was contended that certain recitals on a check which was received and cashed, constituted a written agreement whose terms could not be varied by parole evidence. The court held that the defendant was not bound by words written on the face of a check by endorsing it on the reverse side where the recitals of the face of the check were not called to his attention and he did not learn of them prior to endorsing the check and where there was convincing evidence that the recitals were ambiguous and did not express the true agreement of the parties. The court went on to hold that under the circumstances it was proper to receive parole evidence to explain the recitals and to establish the true terms of the contract agreed upon by the parties.

Defendant also urges that the case of Smith v. Githens, Mo.App., 271 S.W.2d 374, 378, 379, is authority for its defense in this case. The Smith case was a suit on a written contract to recover for asphaltic concrete furnished under the written agreement. Defendant and plaintiff's partner entered into an oral agreement that plaintiff would supply defendant with asphalt concrete for $1 per square yard of paving an airport runway. Plaintiff's partner thereupon transmitted the terms of the parole agreement to plaintiff and plaintiff drew up a written contract calling for asphaltic concrete to be furnished at the price of $10 per ton. The court held that as the written contract did not express the original agreement made by the parties, but an entirely different one, plaintiff cannot avail himself under such contract but must stand by the one which was in fact entered into by both parties.

■ Under the evidence in the instant case the fact that the plaintiff furnished Keith with a schedule showing that the estimated payroll base for the advance premium on the liability policy was the same as used on the Workmen's Compensation policy (which excluded the officers and stockholders from coverage because of express en-

dorsement) coupled with the fact that Keith told Babcock in effect that the premiums on the liability policy would be figured the same as on the Workmen's Compensation policy, does not establish a definite agreement binding on plaintiff to issue a liability policy as could be used as a basis of avoiding the subsequent written insurance contract on the ground of mutual mistake. Assuming, however, that a definite agreement was reached between Keith and Babcock that the compensation of the officers and stockholders would not be included in defendant's payroll in calculating the earned premium on the policy, Keith having no power to write the policy, still had to order the policy from the plaintiff. The liability policy as issued by plaintiff clearly showed that coverage was extended not only to acts of employees but also as to acts and omissions of officers and stockholders and expressly provided that the compensation of all employees including executive officers would be used to calculate the earned premium. The original liability policy and the renewal policy were received by the defendant and under the testimony of defendant's president Babcock, neither he, nor as far as he knew, any of other officers and employees made any attempt to read the policies and made no objection to anyone as to their contents during the entire twelve month period of the original policy and not until after the audit of original policies which was several months after the issuance of the renewal policy. Even though the written policies were different or did not express any alleged prior agreement of Keith and Babcock, the sending of the written policy to defendant constitutes a counter-offer and by receiving the policies and retaining them for the time shown here in evidence without objection, the defendant accepted them and is bound by the policies as written, Neuner v. Gove, supra. Defendant has waived any departure in the contents of the policy from the alleged preliminary agreement and is estopped and precluded from asserting that it is not bound by the provision of the written policies 44 C.J.S. Insurance § 277b p. 1107. We hold that under the circumstances shown by the evidence in this case that defendant has failed, as a matter of law, to establish the defense it claims.

■ Plaintiff contends that it was prejudicial error for the court to permit defendant to introduce testimony of oral conversations between Keith and Babcock as to their understanding relative to excluding the compensation of officers and stockholders in calculating the premiums on the liability policy subsequently issued by plaintiff to defendant and which conversations were at variance with the terms of the policy issued. Plaintiff's theory being that all prior and contemporary negotiations and statements were merged into the written policy, which alone should be allowed to govern.

■ Plaintiff's contention is well taken. "No rule of evidence is better settled than that where the parties enter into a written contract which is complete on its face, their rights and liabilities are to be controlled thereby, and that in the absence of fraud, accident, or mistake, all evidence of prior or contemporaneous oral agreements respecting the same subject-matter, and varying, modifying, or contradicting the written contract, will be inadmissible. In other words, when a contract has been reduced to writing, the law presumes that it embodies the entire agreement of the parties, irrespective of what the antecedent negotiations, conversations, and expectations of the parties may have been." St. Louis Basket & Box Co. v. Mastin, Mo.App., 79 S.W.2d 493, l. c. 495. The court in that case also stated that the parole evidence rule is of particular application to insurance contracts. In Baker v. Keet-Rountree Dry Goods Co., 318 Mo. 969, 2 S.W.2d 733, l. c. 740, 3 S.W.2d 1003, the court stated: "The rule that all previous negotiations are merged into the contract as finally written applies particularly to insurance contracts. 22 C.J. p. 1112."

The parole evidence rule was applied in the case of General Accident Fire and Life Insurance Co. v. Owen Bldg. Co., 195 Mo. App. 371, 192 S.W. 145, on a set of facts almost identical with the situation in the

instant case. Plaintiff Insurance Co. sued to recover unpaid premiums on an indemnity policy. Premiums were based on payroll and cost of construction, and at time the policy was issued an advance premium was charged based on an estimate of defendant's payroll and cost of building. At expiration of policy plaintiff audited defendant's records and found that the total payroll and cost of the building greatly exceeded the estimates and thus resulted in plaintiff claiming an additional premium. Defendant offered to prove by verbal testimony that an agreement was made before the policies were issued that the amounts charged for advance premiums were to be the total premium charge. The court squarely held that the parole evidence rule was applicable and such parole testimony was inadmissible. The court also quoted from the case of Insurance Co. v. Mowry, 96 U.S. 544, 1. c. 547, 24 L.Ed. 674:

> "The understanding of the parties as to the amount of the insurance, the conditions upon which it should be payable, and the premium to be paid, was there expressed, for the very purpose of avoiding any controversy or question respecting them. The entire engagement of the parties, with all the conditions upon which its fulfillment could be claimed, must be conclusively presumed to be there stated. If, by inadvertence or mistake, provisions other than those intended were inserted, or stipulated provisions were omitted, the parties could have had recourse for a correction of the agreement to a court of equity, which is competent to give all needful relief in such cases. But, until thus corrected, the policy must be taken as expressing the final understanding of the assured and of the insurance company."

The defendant contends that the parole evidence rule does not apply in this case because oral testimony is admissible to show that by reason of mistake the written instrument does not express the true intention of the parties, and cites Employers Indemnity

Corp. v. Garrett, 327 Mo. 874, 38 S.W.2d 1049, and Dickson v. Maddox, 330 Mo. 51, 48 S.W.2d 873. The Employers Indemnity Corp. case involved an action in equity to reform a deed and the Dickson case was a suit in equity to set aside a deed. Both cases state the rule that parole evidence is admissible under proper circumstances to vary a written instrument on ground of mistake but the cases are in no wise analogous to the instant case.

In this case the defendant retained the first liability policy throughout the policy period and retained the renewal policy for several months after it was issued without examining the policies and without making any attempt to determine if the written policies were in accordance with the alleged understanding defendant had with Keith prior to the issuance of the policies. No attempt was made by defendant to correct the alleged mistake in the policies and having retained the policies for such a long period of time it must be conclusively presumed that the written policies expressed the final contract of insurance. We must therefore conclude that the oral testimony as to the understanding of Keith and Babcock that the salaries of officers and stockholders would not be included in defendant's payroll in calculating the earned premiums on the policies was inadmissible.

Plaintiff assigns as error the giving of Instruction No. 2 by the court on behalf of defendant, which instruction read as follows:

> "The Court instructs the jury that notice to the agent is notice to the principal, and if you find and believe from the evidence that Ralph Keith was an authorized agent of the plaintiff, Hartford Accident and Indemnity Company, a corporation, with authority to sign and deliver policies of insurance and collect premiums; and if you further find and believe from the evidence that the defendant and Ralph Keith had an understanding and agreement that the premium on the policies issued

and introduced in evidence would be based on wages paid employees, other than officers and stockholders of the defendant, then you will find the issues on plaintiff's petition in favor of the defendant and the issues on defendant's counterclaim in favor of the defendant."

It will not be necessary to consider all of the criticism leveled at this instruction by plaintiff as we have already concluded for reasons previously stated, as a matter of law that defendant did not establish the defense it claims and thus is not entitled to submit the same to the jury. We therefore hold that the giving of Instruction No. 2 was error.

A consideration of plaintiff's last assignment of error in the refusal of the court to give Instruction B offered by plaintiff is not necessary in view of the conclusions already reached herein.

For the errors noted in the admission of evidence and the giving of Instruction No. 2 the judgment of the Circuit Court is reversed and the cause remanded for a new trial.

ANDERSON, P. J., and WOLFE, J., concur.