Sam **STIGERS** and Lila **Stigers**,
Appellants,

v.

Richard M. **HARLOW**, Respondent.

No. 52336.

Supreme Court of Missouri,
Division No. 1.

Oct. 9, 1967.

C. Dudley Brandom, Gallatin, Stephen J. Millett, Kingston, for appellants.

Somerville, Cleaveland & Macoubrie, Ronald L. Somerville, David P. Macoubrie, Chillicothe, for respondent.

SEILER, Judge.

Plaintiffs sued defendant for the wrongful death of their seventeen-year-old son, struck by defendant's automobile. From a verdict and judgment in favor of defendant, plaintiffs appeal. At the outset we are met with respondent's motion to dismiss the appeal on the ground that appellants have failed to file the transcript on appeal within the time allowed by rules 82.18 and 82.19, that in obtaining a ninety-day extension from the trial court on the eighty-sixth day after filing the notice of appeal, appellants failed to show they had complied with rule 82.19 by ordering the transcript in writing from the court reporter within thirty days after filing the notice of appeal and filing a duplicate copy of the order in the case within fifteen days thereafter. Absent compliance with such conditions, the trial court has no authority to make such extension, rule 82.19; Gaddy v. State Board of Registration for Healing Arts, (Mo.App.) 397 S.W.2d 347, 349.

At the oral argument, counsel for appellant offered to introduce a carbon copy of a timely letter to the court reporter, ordering a transcript, and stated that a carbon copy had been sent to the circuit clerk. Counsel for respondent stated this was the first knowledge he had that such a letter ever existed. Being reluctant to dismiss the appeal in the face of the assertion that appellants did comply with rule 82.19, we have obtained a supplemental transcript from the circuit clerk and court reporter on the point involved and on the strength thereof overrule the motion to dismiss the appeal.

However, we caution counsel that it is their duty and responsibility where an extension of time in which to file the transcript has been granted by the trial court under rule 82.19, to see that the transcript on appeal shows affirmatively the trial court had authority to act. Counsel cannot rely on us to do this for them. The safest procedure would be for counsel to see that the trial court's order extending the time recites the date on which the transcript was ordered from the reporter and the date on which the copy of the order was filed in the case.

The fatal accident happened at night on highway 13 between Gallatin and Hamilton, around ten o'clock. The highway runs north and south and has a blacktop surface,

21 feet wide. The son's automobile, a 1958 Chevrolet four-door sedan, was stopped on the right-hand or east side of the highway, headed north. Some of the witnesses testified most of the car was on the east shoulder; others that it was half on the blacktop and half on the shoulder. The sheriff testified the flat surface of the shoulder was about 3 feet wide and it then sloped off about 3 feet into the ditch. The youth apparently was changing the left rear tire. The left rear corner of the car had been raised with a bumper jack, which left an indentation on the blacktop surface, 18 to 24 inches west of the east edge thereof. Three of the nuts on the bolts on the left rear wheel were fairly well tightened and three barely started on the threads. There was a wheel wrench near the rear wheel. A flat tire was lying on the east shoulder, south of the car. Witnesses found part of a flashlight on the edge of the blacktop, between the jack and the flat tire. Snow was falling, some describing it as ordinary medium snow, others as a heavy wet snow. The blacktop surface was wet and slick. There was a dispute as to what lights, if any, were burning on the stopped car. Plaintiffs' witnesses testified that when they passed the scene, driving south, a few minutes before the accident, the headlights were on and one said as they passed she saw the reflection of the taillights. Defendant, called as a witness by plaintiffs, testified there were no lights burning on the car, front or rear, as did his wife. The first witnesses to arrive on the scene afterwards testified there were no lights burning on the stopped car.

Those who passed the car shortly before the accident testified the trunk lid was up. One said the car was jacked up with the left rear wheel off. They noticed a young man standing closely behind the back end of the car. One witness observed a lighted flashlight in his hand; others did not.

The only eyewitnesses were defendant and wife. Defendant testified he was driving 45 to 50 miles per hour, on the east half of the road, looking straight ahead, windshield wipers operating, headlights on bright; that it was snowing, that he did not at any time see the decedent, that the first thing he saw ahead was what "seemed like a blur", right in front of him, 25 to 30 feet ahead, that this turned out to be the youth's car. He swerved to his left or west to miss the car and as he swerved he felt an impact. As to visibility, he testified on direct examination he could only see ahead 25, 30 or 40 feet because of the snow. On cross-examination he first said the snow did not affect the visibility, but then said it did interfere with his ability to see ahead.

Mrs. Harlow testified visibility was poor, because of the falling snow, that they could see around 40 feet ahead, that they missed the car about three feet, that when the two cars were "approximately even" there was an impact and what must have been the body struck the right-hand side of the windshield. Defendant then started to stop, pumping his brakes.

The sheriff testified, without objection, that defendant told him he met a car, had his lights on low beam, and when he raised the lights to high beam, there was the car. Another witness said defendant said the son "just raised right up in front of my lights" and "I hit him."

The damage on the defendant's vehicle was a broken right front headlight, right front fender dented, rear view fender mirror on the right knocked off and windshield broken in the lower right-hand corner. There was no damage to the decedent's vehicle, except the sheriff observed a slight dent at the left rear, not otherwise elaborated upon. The sheriff testified further he saw nothing at the scene or on either car indicating any contact between the two vehicles.

The body of the deceased was found on the east shoulder, about 30 feet in front or north of his car. There was no testimony as to the color of the clothing, except the jeans might be blue. The injuries were not described with particularity, except there

was a "good sized indenture in the back of the head".

The witnesses who were travelling south before the accident testified they observed the lighted headlights on the stopped car from a distance of a half to quarter of a mile away. There was testimony that the road to the south from the location of the stopped car was straight and slightly down grade with no obstruction to cut off the view of approaching headlights of a northbound car for distances variously estimated from a quarter of a mile to a mile.

■■■■ Turning now to the merits, we rule the court did not err in overruling plaintiffs' motion for a directed verdict against defendant on liability, made at the close of all the evidence. Plaintiffs submitted their case on failure to keep a careful lookout or driving at an excessive speed under the circumstances. There was sufficient evidence in the record to support such submissions, but it cannot be said that under the evidence all reasonable men would conclude defendant was liable for the regrettable death of plaintiffs' son, even though some of the evidence against defendant came from defendant himself. For example, part of the evidence (including defendant's testimony) was to the effect there were no lights burning on the son's car and that it was standing half way on the northbound lane of the paved portion of the blacktop highway in bad weather; also that there was no light being displayed by the son or on his person. The jury could conclude there was no reason why decedent's person should have been observed any sooner by defendant than the stopped car. There was also some indication defendant's vision was impaired by meeting the lights of an oncoming car just before coming upon decedent's car. Defendant swerved to his left sufficiently to miss the other vehicle by three feet after he saw a "blur" some 40 feet ahead. There was no evidence defendant should have anticipated the presence of an unlighted vehicle stopped partly on his side of the road. The accident occurred at an hour when lights were required on stopped vehicles. Under these circumstances the inference of negligence on the part of defendant was for the jury, not the court, Vincent v. Raffety, (Mo.App.) 344 S.W.2d 293, 295–296. In addition, contributory negligence was a live issue in this case and before plaintiffs would be entitled to a directed verdict on liability it would have to appear conclusively that defendant had not made a submissible issue on this defense, Hartford Acc. & Indem. Co. v. Farmington Auction, (Mo.App.) 356 S.W.2d 512, 518. Finally, it is very doubtful if a directed verdict for plaintiffs on liability would be proper in any event in a case resting entirely upon oral testimony as to the facts of an automobile accident, Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, 559; Beezley v. Spiva, (Mo.Sup.) 313 S.W.2d 691, 695.

■■■■ Going to the other points which were properly raised in the motion for new trial and carried forward in appellants' brief, Rules 79.03, 83.05 and 83.13, appellants contend the following submissions in defendant's main instruction, namely:

"Your verdict must be for the Defendant, whether or not defendant was negligent, if you believe:

First, that Plaintiff's son, Larry P. Stigers, deceased, either:

had his vehicle stopped or parked partially on the travel portion of said public highway and partially on the shoulder of said public highway at night time without any light on or burning, or

had his person on the travel portion of said highway at night time during adverse weather conditions * * *",

in effect told the jury the mere existence of such acts or omissions, if so, constituted negligence in themselves. It is apparent from reading the above that it is not open to the objection made. Moreover, the instruction in question, in accordance with Missouri Approved Jury Instructions, con-

tains the additional requirement in the next paragraph that:

"Second, Plaintiff's son's conduct, in any one or more of the respects submitted in paragraph First, was negligent",

so that the jury was required by the instruction not only to find the fact of the hypothesized conduct but also that it was negligent. " * * * An instruction which requires the jury to find the defendant negligently did the acts does not assume negligence. * * * " Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449, 456. We therefore overrule this contention.

■ Appellants' remaining points are that defendant's main instruction was erroneous because there was no evidence supporting the submission of decedent's failure to keep a careful lookout for defendant's oncoming vehicle or that decedent "knew or by exercise of the highest degree of care should have known there was a reasonable likelihood of being struck by defendant's oncoming vehicle in time to have removed himself to a place of safety out of the path of the oncoming vehicle but failed to do so".[1] The only definition of negligence given was MAI 11.03, offered by defendant, defining the term as "failure to exercise the highest degree of care", etc., and appellants make no contention of error in this regard. There was evidence that the ground contour was such that the lights of an approaching northbound automobile for as far as a mile away could be seen by a person standing on the highway at the location of decedent's automobile; that other drivers were able to and did see headlights of cars at or approaching the scene for distances of a mile or so; that the public highway involved carried a fairly heavy flow of traffic; that

defendant was approaching at a speed of between 45 to 55 miles per hour, which would mean his headlights would be in the visibility area while approaching the decedent for perhaps as much as a minute and a third, during which time, judging from the testimony of defendant and wife, there was nothing in the manner of defendant's steady approach to indicate defendant was aware of the car or the son ahead in his path. The evidence indicated that plaintiffs' son was struck by the right front corner of defendant's car when defendant was in the act of clearing the stopped vehicle by about three feet, evidently when defendant's vehicle was about abreast of the other. It is not clear what the son was doing in the position where he was when struck or how he got there, but it is clear that he did not stay behind his car or put himself at least as far from defendant's path of travel as his car was. Had he done so the accident would not have occurred, because defendant succeeded in missing the car by three feet. A step or two to the right or east would have removed the son from the path of danger. We cannot say on this record there was no substantial evidence to support the portions of the instruction of which appellants complain, 7 Am.Jur.2d Automobiles and Highway Traffic, Sec. 381, pp. 930–932, and also overrule these contentions.

Finding no error in the points raised, we accordingly affirm the judgment.

Judgment affirmed.

HENLEY, P. J., and STORCKMAN, Alt. J., concur.

HOLMAN, J., not sitting.

---

[1] Plaintiffs refer to this latter alternative as an attempt to use humanitarian or last clear chance negligence against plaintiffs, and say it is difficult to find any Missouri cases where such a defense was used. However, we do not believe the instruction involves humanitarian negligence (without expressing any opinion as to the consequences if it did), because it is obviously a modification of MAI 17.04 (primary negligence) used to submit contributory negligence, as authorized by Notes on Use, Missouri Approved Jury Instructions, p. 120.