[No. 14807.   Department One.   August 8, 1918.]

## WALLA WALLA OIL, GAS & PIPE LINE COMPANY, *Appellant*, v. J. B. VALLENTINE *et al.*, *Respondents*.[1]

FRAUDS, STATUTE OF—CONVEYANCE OF REAL ESTATE—OIL AND GAS LEASE.   An oil and gas "lease" permitting the licensee to search and dig for oil and gas and appropriate the same upon payment of a royalty, creates only an incorporeal hereditament or chattel interest, in no manner proscribed by the rules against conveyances or incumbrances of real estate except by writing; hence the real beneficiaries may be shown by parol.

CORPORATIONS—REPRESENTATION BY OFFICERS—NOTICE—BONA FIDE PURCHASER.   A corporation taking oil and gas leases from its officers who had full notice of adverse rights of third persons is not an innocent purchaser.

Appeal from a judgment of the superior court for Spokane county, Geo. H. Armitage, Judge *pro tempore,* entered September 26, 1917, upon findings in favor of defendants in an action to establish a trust in oil and gas leases, tried to the court. Reversed.

*Guy B. Groff* and *Daniel K. Zimmerman,* for appellant.

MITCHELL, J.—Appellant, plaintiff, a corporation, was organized in April, 1916, and is engaged in procuring oil and gas leases for the purpose of developing the properties for the production of oil and gas. About the date of organization, defendant employed one Arthur C. Harris, a stockholder, to act as its agent in securing oil and gas leases. It was considered advisable to take the leases in the name of Harris, who later should assign them to the company. Thus acting, Harris obtained a number of such leases in Benton county. All money needed therefor, including the ex-

[1]Reported in 174 Pac. 980.

penses of Harris, was paid by the company. A part of the paper interest of Harris in some of these leases was assigned by him as directed by the company. A dispute arose between them as to the remainder. Harris claimed he owned a portion of them, while the company held he had no beneficial interest in any. Notwithstanding several conferences and demands, Harris refused to assign any of them. Respondent J. B. Vallentine had already had correspondence with the appellant in regard to selling its stock, and about the time Harris commenced to deny any rights of the company in the leases Vallentine and Harris planned, and were forming, a corporation known as Spokane Benton Oil and Gas Company. Through his association with Harris and conferences with the officers of the appellant, Vallentine learned of the trouble about the leases, and, being told by the appellant they were its property, Vallentine was unwilling to take an assignment of the leases from Harris, as he and Harris had planned, to the corporation just formed by him and Harris, and, reminding appellant of his close relations with Harris, entered into an arrangement with appellant by which, in consideration of stock to be given him and his being made a director later on, he would mediate a settlement between appellant and Harris. Pursuant to their plan, appellant agreed to, and did, prepare a complaint in a suit against Harris, of which he was advised, to establish its ownership of the leases, whereupon, and by active negotiations, Vallentine succeeded within a few days in adjusting the dispute with Harris, by which, with the approval of appellant, Harris retained a small part of the leases and assigned the rest to Vallentine. A written acquittance of all liability was given to Harris by appellant. Appellant also dropped its suit against Harris. At the exchange and delivery of these papers, Vallentine

represented appellant.  On taking assignments from
Harris, it was understood by him, Vallentine and ap-
pellant that, while they were taken in Vallentine's
name, the transaction was for the benefit of appellant.
The assignment was delivered by Vallentine to an of-
ficer of the appellant corporation, who had it recorded
at the expense of appellant in the office of the audit-
or of Benton county.  The reason the assignment
was taken in Vallentine's name was to facilitate his
efforts in a scheme by which the S. U. Hale Company
should, if possible, be induced to become interested by
the use of its machinery and appliances in developing
this gas and oil field for appellant.  Later, and prior
to April 1, 1917, it was ascertained the S. U. Hale Com-
pany would not become interested.  In the meantime,
and during February and the early part of March,
1917, respondent J. D. O'Brien and one H. H. Alvis,
noticing the activities of appellant, Harris, and Val-
lentine, learned through conferences with appellant's
officers and Harris that all leases assigned by Harris
to Vallentine were as a fact the property of appellant.
However, later on, and about March 17, 1917, respond-
ent Spokane Wyoming Oil & Gas Company, a corpo-
ration, was organized at the instance of O'Brien and
Alvis, with them as two of its principal officers.  On
March 24, 1917, Vallentine assigned to O'Brien one of
the leases theretofore assigned to him by Harris, and
on the same day O'Brien reassigned it to his company,
Spokane Wyoming Oil & Gas Company.  On several
occasions prior to the present action, and after failure
to interest the S. U. Hale Company, appellant offered
to deliver to Vallentine the amount of stock he was
entitled to according to agreement, and demanded of
Vallentine an assignment to it of the leases assigned
by Harris to him, appellant having already waived its

right of action against Harris on account of procuring assignments from Harris to Vallentine. This demand was positively refused by Vallentine, who denied that appellant ever had any right in the gas and oil contracts. The contracts involved are spoken of as being the common kind of oil and gas leases which permit the lessee (so-called) for a term of years to go upon the land to prospect for oil and gas, mine, and operate tanks, power stations, oil and gas pipe lines, etc., upon a royalty basis or part interest in the output.

This action was commenced about April 16, 1917, for a judgment declaring defendants to be the holders in trust of the title to the property involved. Defendants answered, denying generally, upon which pleadings a trial was had, resulting in a dismissal of the cause of action upon the theory that the case was one in which plaintiff was seeking to establish by oral testimony an express trust in real estate, the trial judge remarking that such procedure is not permissible under our statute, although being entirely satisfied by a preponderance of the evidence that the appellant would be entitled to a judgment if nothing more than chattel interests were involved. The Walla Walla Oil, Gas & Pipe Line Company, a corporation, plaintiff below, appeals.

Because of the supposedly migratory character of oil and gas, which are not fixed in place like coal and other solid minerals, such contracts as those involved in this case convey no interest in, nor create any incumbrance upon, the land or any oil or gas found therein. The land is still to be considered in the possession of the grantor; the contract amounts only to a license entitling the licensee to search and dig for oil and gas according to the terms of the grant, and appropriate the produce to his own use on payment of

the royalty or proportion without acquiring any property in the minerals until they are severed from the land. They create only an incorporeal hereditament— a right issuing out of or concerning land. Such contract establishes a mere chattel interest, in no manner under the proscription of any rule, statutory or otherwise, against conveyances or incumbrances of real estate or other interests except by writing. The real beneficial owner of such property right may be shown by parol. *Funk v. Haldeman*, 53 Pa. St. 229; *Aaron v. Rothrock*, 102 Kan. 272, 169 Pac. 1161; *Smith v. Root*, 66 W. Va. 633, 66 S. E. 1005, 30 L. R. A. (N. S.) 176; *Richlands Oil Co. v. Morriss*, 108 Va. 288, 61 S. E. 762.

As to the leases assigned to O'Brien and thence to Spokane Wyoming Oil & Gas Company, respondents O'Brien and Spokane Wyoming Oil & Gas Company claim they are entitled to protection as innocent purchasers. There is some proof from interested parties in favor of such claim, but we are satisfied by the clear preponderance of the evidence that, prior to the transfer to O'Brien by Vallentine, O'Brien and Alvis had full information of appellant's rights and that the respondent corporation, which was shortly formed by O'Brien and Alvis as its leading spirits and officers, is chargeable with that notice and entitled to no protection.

Appellant confesses, however, that Vallentine was to receive some of its stock for his services in adjusting its dispute with Harris, the amount of which we are not advised by the record. This amount will be ascertained by the trial court and, upon delivering it to Vallentine or depositing it in court for him, the trial court will decree a conveyance or assignment to appellant by respondents of all oil and gas leases held by them and mentioned in this cause.

Reversed and remanded with instructions to proceed as herein directed.

MAIN, C. J., PARKER, TOLMAN, and FULLERTON, JJ., concur.