S. E. FRIZZELL ET AL., Appellants, v. STEWART LUMBER COMPANY ET AL.—44 S. W. (2d) 615.

Division One, December 21, 1931.

*W. J. Owen* for appellants.

*Chas. M. Grayston* for respondents.

STURGIS, C.—The plaintiffs in this case conducted business as the Lucky Thoughts Mining Company and will be referred to in the singular and by that name. Such company sues the defendants for damages for having seized and converted to their own use certain property and appliances used in mining, consisting of a mill building, jigs, hoppers, derricks, etc., located on a certain tract of land on which plaintiff had the right to mine. The fact developed that defendants seized and took this property under an execution and sale thereunder in a mechanic's lien suit in the Circuit Court of Jasper County against Alva J. Cunningham. The defendant Stewart Lumber Company was the claimant and plaintiff in that action, and the defendant McNeil Machinery Company was the purchaser at the

execution sale. It stands conceded that defendants did convert said property to their own use, claiming title under such execution sale, and that plaintiff had title and should recover unless defendants obtained a better title by reason of such execution sale. There is no question either that by such judgment, execution and sale the defendants obtained whatever title to the property in question the defendant in that action, Alva J. Cunningham and his associates, had or could be conveyed under judgment and execution. The facts as to Cunningham's title are that plaintiff had a mining lease on a tract of land in Jasper County, Missouri, which was partially developed, and also had thereon certain mining machinery and appliances. Cunningham desired to purchase plaintiff's mines, mining rights and machinery and after some negotiations plaintiff and Cunningham entered into the following contract:

"OPTION TO PURCHASE MINING RIGHT.

"This agreement made and entered into this the 23rd day of March, 1926, by and between V. Evans, S. E. Frizell, M. Lowne, B. Lowne, and J. Hepburn, doing business as Lucky Thoughts Mining Company, as parties of the first part, and Alva J. Cunningham, Trustee, as party of the second part, WITNESSETH:—That said first parties do hereby obligate and bind themselves, their heirs, executors, administrators and assigns, to well and truly execute and deliver to said party of the second part, his heirs and assigns, a good and sufficient transfer and assignment of any and all rights, titles and interests acquired by a certain writing dated the 23rd day of June, 1925, and given by the Sadtler Lead & Zinc Company to said S. E. Frizell covering the East one-half of the northwest (NW¼) Quarter of the Southeast (SE¼) Quarter and the West-half of the Northeast (NE¼) Quarter of the Southeast (SE¼) Quarter of Section Ten (10) Township Twenty-seven (27) Range Thirty-two (32), Jasper County, Missouri, containing forty (40) acres more or less, together with such mining machinery and mining appliances as is now on said land and belonging to the said Lucky Thoughts Mining Company, said mining right being for a term of ten years from the date thereof and at a royalty of ten per cent on all ores mined and sold from said lands, said conveyance to be made and delivered upon the following conditions and none other to-wit: Said party of the second part will well and truly pay in cash or cause the same to be paid to first parties or their authorized agent within ninety days from this date the full sum of five thousand dollars, and the further sum of one thousand dollars each and every thirty days thereafter for ten months and until the purchase price of fifteen thousand dollars is fully paid, and when said fifteen thousand dollars is fully paid as herein provided then the said transfer shall be executed and property turned over, and every sum so paid shall be paid and received

as and for liquidated damages unless the full amount of fifteen thousand dollars shall be paid. It is further agreed that if the mines are worked during the periods of payment herein mentioned all material, work, labor, supplies and expenditures shall be paid each and every Saturday by said Second party or assigns, and no ores shall be sold from said lands until the said five thousand dollars has been paid said first parties and all ores sold thereafter shall be accounted for to first parties each turnin and if the full purchase price be not paid as herein provided then all profits of mining operations shall be paid to first parties in addition to payments made before default.

"The first parties reserve the right to enter and inspect all shafts, drifts and structures in or on said lands, without costs to them until the purchase price is fully paid. If said second party or assigns shall construct or place any machinery or structures on said land or improve such as are now on said lands the same shall pass to and belong to first parties upon abandonment or forfeiture of this contract before the said five thousand dollars is paid. It is further agreed that if any of the one thousand dollar payments are not made when due, the said first parties may reenter and take possession of ground, mines, machinery and buildings on said lands and at their option exclude the second party, employees or assigns therefrom.

"Any failure, neglect or refusal on the part of the second party, his heirs or assigns, to carry out and fulfill all requirements hereof or to make the payments as herein provided and at the time and manner stated then this option and right shall without notice of any kind end and terminate and the first parties may take possession of all said property."

On the making of this contract Cunningham took full possession of the mines and mining machinery and proceeded to develop, improve and operate the same. He enlarged and improved the mining plant, rebuilt the building, placed new machinery therein, etc. In doing so and for that purpose he purchased lumber and building material from the defendant Stewart Lumber Company which was used in the improvement and construction work, and purchased and installed therein certain mining machinery from the McNeil Machinery Company. The mining venture by Cunningham apparently proved a failure and these material bills were not paid and mechanic's liens were filed in due time and the Stewart Lumber Company obtained a judgment establishing a lien against the property in controversy, which was then sold under execution and purchased by the McNeil Machinery Company.

It further appears that Cunningham paid plaintiff nothing whatever under the contract above set out and defaulted as to the payment of the entire purchase price. At the time the mill building and mining appliances were sold under the execution Cunningham

seems to have ceased mining operations and abandoned the property in controversy, and the McNeil Machinery Company thereupon dismantled and removed it from plaintiff's premises or lease. The contract above set out was never recorded and the Stewart Lumber Company had no knowledge of its terms and conditions at the time it sold the lumber and material to Cunningham, then in possession, and which was the basis of the mechanic's lien suit, judgment and sale. The defendant Stewart Lumber Company's claim in this respect is stated in its answer thus:

"Defendant says that at the time credit was extended to the said Alva J. Cunningham, defendant in said mechanic's lien suit, he was in the open, notorious and adverse possession of the premises and property then existing and continued to be, and that this defendant had no notice, actual or constructive, of any interest, lien or claim of these plaintiffs in or to any of said property, and said defendant alleges that any right which these plaintiffs had or may have had in and to any of said property was inferior to the rights of this defendant, and that any and all contracts by which these plaintiffs might acquire title or rights in or to said property or any of it were void as against these defendants because of the absence of possession in the plaintiffs and because of the failure of the plaintiffs to record any such instrument or to afford this defendant any actual or constructive notice thereof." The plaintiff was not made a party to the mechanic's lien suit or judgment.

On hearing the evidence establishing the facts as here outlined the court instructed the jury to return a verdict for defendants. Plaintiff took a nonsuit, which the court refused to set aside, and has duly appealed.

The defendants' contention is that under Sections 3123 and 3125, Revised Statutes 1929, relating to fraudulent conveyances, the contract above mentioned is void as against creditors of Cunningham, the grantee therein, on account of not being recorded, regardless of what title or interest in the property was retained by plaintiff as between the parties. On the contrary, plaintiff claims that such contract is an option contract merely giving Cunningham the right to purchase the property in question, which he did not do, and that the statutes mentioned have no application to option contracts.

So far as pertinent here, Section 3123, Revised Statutes 1929, provides that sales of personal property shall be void unless followed by delivery within a reasonable time, and "no sale of goods and chattels, where possession is delivered to the vendee, shall be subject to any condition whatever as against creditors of the vendee, or subsequent purchasers from such vendee in good faith, unless such condition shall be evidenced by writing, executed and acknowledged by the vendee, and recorded as now provided in cases of mortgages

of personal property." This section by its terms deals only with sales of goods and chattels.

Section 3125, Revised Statutes 1929, is somewhat broader and covers "all cases" where personal property is sold on installments "or shall be leased, rented, hired, or *delivered* to another," where title is reserved in the vendor till the purchase money is paid, and makes such reservation void as to creditors where the instrument is not put of record.

It will be noticed that said sections deal with the delivery of property in case of change of ownership by sale, or with property which is delivered to another under an instrument by which the title or some interest, lien or claim is retained by the vendor. The evident purpose is to protect creditors or purchasers dealing with the person in possession of the property and clothed with apparent ownership. If a person who had prior possession and ownership has delivered possession to and clothed another with apparent ownership under an agreement looking to a change of ownership to such other person on the payment of the purchase price, but seeks to retain the title or lien on such property in the possession of such other person till the purchase price is paid, then such agreement must be in writing and be put of record or it will be void as to creditors or purchasers from such apparent owner. These statutory provisions are not so much leveled at the particular kind of sale contracts, such as bills of sale, leases, options, etc., as to the status or effect which is brought about by making the apparent absolute owner in possession a mere conditional owner.

In Collins v. Wilhoit, 108 Mo. 451, 456, this is said, speaking of the first statute mentioned: "The two clauses are certainly alike in this, that they seek to prevent a false show of wealth. We think it will also appear from what is hereafter said, that each clause makes the described transaction void as to creditors, as a matter of law. The one seeks to protect creditors of the vendor, and the other creditors of the vendee, against a false appearance of ownership of personal property. Both clauses are based upon the same policy." This language is applicable to Section 3125, Revised Statutes 1929, also.

In Landreth Machinery Co. v. Roney, 185 Mo. App. 474, 482, a case much similar to this on its facts, the court said: "In the case at bar the Cornells were given the absolute and unconditional possession of the mill to move upon a lease owned by them, there to be possessed and occupied as theirs in operating a mine on their own leased premises; thus putting it within the power of these parties to create a false impression as to their financial worth and making it possible to defeat the claim which plaintiff had a right to believe it had to a lien for material furnished to go into the mill, if we hold the transaction not covered by the statute. We think to hold other-

wise would be to wholly disregard the spirit and purpose of the statute. We, therefore, hold that at the time plaintiff sold and delivered the items contained in the statement the Cornells, as to plaintiff, had the sole and unconditional ownership in the mill.''

In Loeffler v. Damoree Bros., 75 Mo. App. 207, 210, the court said: ''If one delivers possession of personal property to another in pursuance of an agreement that upon certain payments being made, or secured, the property is to become the property of that other, and in the meantime is to remain the property of the vendor, he violates the statute.''

See also Eidson v. Hedger, 38 Mo. App. 52, 56.

We may grant that the statutes in question do not apply to ordinary option contracts, that is contracts which merely give to the second party a right or privilege to purchase designated property at a given price and within a fixed period and bind the first party to sell and convey if such conditions are met, but which in no way bind the second party, except by forfeiture or penalty, to consummate the sale or pay the purchase price.

An option is defined to be ''a continuing offer or contract by which the owner stipulates with another that the latter shall have the right to buy the property at a fixed price within a certain time, and unless the option is founded on a consideration or is under seal, it may be withdrawn at any time before acceptance. Such an offer imposes no obligation upon the offerer, unless within the time expressly or impliedly limited it is accepted.'' [35 Cyc. 56.]

The difference between contracts of sale and options is pointed out in 39 Cyc. 1179 thus: ''There is a contract of sale and not a mere option where the vendor is bound to convey to the purchaser upon the terms of the contract agreed upon and the latter is bound to purchase, even though the contract may be designated therein as an option; but there is an option only where the purchaser is not bound to take the property unless he subsequently agrees so to do. The vendor in such a transaction has made an offer which in some cases is revocable, and in other cases is irrevocable, but which becomes a contract of sale only upon acceptance by the purchaser.'' This same definition is adopted in Montgomery v. Hundley, 205 Mo. 138, 152.

It will be readily seen that in cases of options the possession of the property, generally at least, remains with the vendor and the vendee takes possession only when the option is foreclosed by a sale.

Stripped of its verbiage, the essential part of the contract in question is an option to purchase rather than an agreement of purchase. By its terms the first party, Lucky Thoughts Mining Company, binds and obligates itself to execute and deliver to the second party, Cunningham, a good and sufficient transfer of the mining lease, together with the mining property and appliances on the land, such

conveyance to be made upon these conditions: The second party is to pay $5,000 in cash within ninety days and $1,000 per month thereafter until the purchase price of $15,000 is paid; then said transfer of the property shall be executed and the property turned over; the sums paid shall be paid and received as liquidated damages unless the whole $15,000 purchase money shall be paid. As we read the contract, there is nothing which binds the second party to pay such purchase price, and plaintiff could not maintain an action to enforce such payment. The fact that the contract provides that payments which are already made shall be forfeited and returned by the first party as liquidated damages in case the second party does not pay the full purchase price does not prevent the contract from being a pure option. As said in Hoppock v. Gaines, 284 S. W. 191, 194, "If it is merely an option with a provision for liquidated damages in case defendants should not consummate the purchase by full payment, then no cause of action has accrued against defendants by reason of their refusal to go further in compliance with the terms of the contract. . . . We are of the opinion that the contract relied upon in this case should be construed as an option contract with a provision for liquidated damages in case of a failure on the part of defendants to consummate the purchase."

If the contract in question contained no other provisions than those we have mentioned as constituting an option, we might well hold that the statutes in question do not apply and the recording of the contract was not necessary to protect plaintiff's rights; especially so if there was no delivery of possession thereunder. But this contract and what was done under it goes much further and we think brings it within the meaning and purpose of the statutes in question. The further provisions of the contract clearly imply and give the second party, Cunningham, the right of sole control and possession. It clearly provides that Cunningham shall do what he did do—take full possession of the mines and machinery and operate and improve the mining plant. It provides, for plaintiff's protection, that "all material, work, labor, supplies and expenditures" shall be paid for every Saturday by the second party, and that the ores mined shall not be sold until the first $5,000 of the purchase price is paid; also that the first party shall have the right to inspect the mines, and that all new machinery and structures placed on said land by the second party and the improvements on such as are already there shall pass to and belong to the first party upon abandonment or forfeiture of the contract before the $5,000 on the purchase price is paid; and if the $1,000 payments to complete the purchase price are not made when due, the first party may reenter and take possession of the grounds, mines, machinery and buildings. It clearly contemplates that Cunningham will enlarge and improve the mining plant and

will purchase material for that purpose, for which the law gives a mechanic's lien. The facts here bring the case within the provisions of Section 3125, Revised Statutes 1929, providing that when personal property is "delivered to another on condition" that title will pass to such other person when the agreed purchase price is paid, meantime the title to remain in the vendor or deliverer, such condition is void as to creditors or purchasers unless the agreement is in writing, duly acknowledged, and recorded.

The result is that the judgment of the trial court is affirmed. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.