172 N.J. Super. 415 (1979)
412 A.2d 810
JANE McINTYRE, PLAINTIFF,
v.
ILB INVESTMENT CORPORATION, A NEW JERSEY CORPORATION, AND IRA L. BLAINE, DEFENDANTS.
Superior Court of New Jersey, Law Division  Cumberland County.
Decided December 19, 1979.
*416 Mark Kutner for plaintiff (Shapiro, Eisenstat, Capizola, O'Neill and Gabage, attorneys).
Peter S. Hennes for defendants (Babcock and Hennes, attorneys).
*417 MILLER, J.S.C.
This is an action against a corporation and its sole shareholder-director for payment on a demand note and for damages based upon allegations of material misrepresentations in the sale of a security and various violations of the New Jersey Uniform Securities Law.
The essential facts are as follows: In return for a consideration of $20,000 supplied by plaintiff's mother, Mary Ann Durfee Stites, defendant ILB Investment Corporation (ILB) executed a document on or about May 24, 1976 wherein it promised to repay after 30 days' written notice the principal sum plus interest at 12% a year after 12 months. In June 1978 Mrs. Stites assigned her interest in the ILB note to her daughter, Jane McIntyre, plaintiff herein.
On July 25, 1978 plaintiff demanded in writing the sum due to her. Repayment was not made, however, and this suit was instituted on August 7, 1978.
Thereafter, plaintiff moved for summary judgment on counts 1, 7, 8 and 9 of the complaint. Judgment was granted in plaintiff's favor on the first count which sought recovery of the $20,000 paid to ILB plus interest at 12%. This court held that the document executed by the parties on May 24, 1976 was clearly a note which entitled plaintiff to payment in full according to its express terms.
Judgment was reserved on counts 7, 8 and 9 which sought damages in the amount of $20,000 plus 12% interest a year against the corporate defendant and its sole shareholder-director, Ira L. Blaine, for violations of the New Jersey Uniform Securities Law, N.J.S.A. 49:3-47 et seq. With respect to this part of the motion plaintiff submitted official findings of fact and conclusions of law prepared by the New Jersey Bureau of Securities as a result of hearings held on October 25 and 26, 1977, in which defendants herein were charged with various violations of the State's securities law, N.J.S.A. 49:3-47 et seq. Plaintiff's position is that since these findings established that *418 both defendants sold unregistered securities which were required to be registered to certain named investors and that same was accomplished by material misstatements of fact and materially misleading omissions, defendants should be "collaterally estopped" from relitigating the issues concerning the Securities Law violations in the present suit.
Defendants promptly filed a cross-motion for dismissal of counts 7, 8 and 9 based on the two-year statute of limitations in N.J.S.A. 49:3-71(e). In her answering brief plaintiff argued that the statute of limitations had not been raised as an affirmative defense and drew an analogy to the "discovery rule" in tort law which permits the tolling of the limitations period until the injured party discovers or should have discovered the injury. See Lopez v. Swyer, 62 N.J. 267 (1973). Furthermore, plaintiff argued that defendants were "estopped" from relying on the statute of limitations by virtue of their conduct in employing delaying tactics.
Pursuant to R. 4:5-4 defendants then moved successfully to amend their answer to include the limitations defense.
Since dismissal of counts 7, 8 and 9 based upon a statute of limitations would render plaintiff's motion for summary judgment on these counts moot, that issue must be resolved first.
In counts 7 and 8 plaintiff alleges that defendants willfully offered and sold unregistered securities in violation of N.J.S.A. 49:3-60 and 49:3-70(b), and that same was accomplished by making untrue statements of material facts and by omitting to state material facts necessary in order to make the statements not misleading in violation of N.J.S.A. 49:3-52 and 49:3-70(b). Count 7 seeks judgment against ILB and count 8 seeks judgment against defendant Blaine as the person controlling the selling entity, N.J.S.A. 49:3-71(b). Both counts demand damages under the civil liabilities section of the Securities Law, N.J.S.A. 49:3-71. That section gives the buyer of a security the right to sue to recover the consideration paid, together with *419 interest at the rate of 6% a year from the date of payment and costs, less the amount of any income received.
The limitations section, however bars suit more than two years after the contract of sale. In the instant case suit was not instituted until August 7, 1978, more than two years after the contract of sale. Until recently the limitations section had not been construed. In her brief plaintiff cites Roberts v. Magnetic Metals Co., 463 F.Supp 934 (D.N.J. 1979), for the proposition that the statute of limitations in N.J.S.A. 49:3 71(e) is tolled under the "discovery rule."
Nowhere in Roberts, however, was there a discussion of the "discovery rule" with respect to N.J.S.A. 49:3 71(e). The only case on point is Birotte v. Merrill Lynch, Pierce, Fenner & Smith, 468 F. Supp. 1172 (D.N.J. 1979), where Judge Meanor observed that the discovery rule has been applied in New Jersey only to the two-year limitations period of N.J.S.A. 2A:14-2 (personal injury actions). Without expressly precluding its application to the limitations defense in N.J.S.A. 49:3 71(e) Judge Meanor held:
... There have been no cases extending the discovery rule to actions brought under the New Jersey Uniform Securities Law. Even if the concept of the discovery rule were to apply to the State securities law, plaintiff would be unable to avail himself of its benefit. The rule states that the cause of action accrues "at the time when the claimant knows or in the exercise of reasonable diligence should have known of a breach of duty owed him by the defendant and he knows or in the exercise of reasonable diligence should have known that he has suffered injury as a result of that breach." Gleason v. United States, 458 F.2d 171, 174 (3d Cir.1972) (applying New Jersey law). Here, the deposition testimony of plaintiff indicates a lack of reasonable diligence in overseeing his investments. See note 7, supra. Accordingly, the discovery rule will not toll the running of the two-year statute of limitations set forth in N.J. Stat. Ann. § 19:3-71(e).
In Birotte plaintiff had ignored letters from his stockbroker to the effect that his investments were continuously overmargined. In that respect it is distinguishable from the case at bar.
*420 As the assignee of the investment agreement, plaintiff stands in the shoes of her assignor and is subject to any defenses which could have been asserted against her. See 6 Am.Jur.2d, Assignments, § 102.
The question, then, is whether plaintiff's assignor knew or in the exercise of reasonable diligence should have known of defendant's alleged material misrepresentations and omissions and sale of an unregistered security within the limitations period, and whether she knew or in the exercise of reasonable diligence should have known that she suffered injury as a result. Plaintiff's assignor contends that she did not learn that defendants would not return the money invested until ILB ceased making interest payments on or about August 31, 1978. Plaintiff maintains that it was not until these payments stopped that she and her mother became aware of the true nature of the investment and began to investigate ILB and Blaine. The merits of this allegation are suspect since the complaint was filed on August 7, 1978, several weeks before these interest payments allegedly stopped.
Count 7 of the complaint specifically refers to the March 7, 1978 findings of the New Jersey Bureau of Securities which found defendants to have violated provisions of the Uniform Securities Law which are in issue here and concern the same type of investment agreement which is the subject of this suit. The initial Bureau of Securities hearings were held back in October 1977, at which time numerous witnesses were called, including many of the investors of ILB.
There are no facts before the court, however, which support a finding that plaintiff's assignor was called as a witness at these hearings or that she knew or through the exercise of reasonable diligence should have known that they were being held. The nature and extent of her knowledge, if any, is a factual question which cannot be determined on a motion for summary judgment.
Even if a jury were to find that plaintiff's assignor knew or in the exercise of reasonable diligence should have known of the *421 Bureau of Securities hearings and the factual findings of the Bureau Chief, the second part of the discovery rule must still be satisfied. This part of the rule provides that plaintiff's cause of action does not accrue until she knew or in the exercise of reasonable diligence should have known that she suffered injury as a result of defendant's breach of duty. Under the applicable statutory section a person suing for a material misrepresentation or omission in the sale of a security must also prove that she suffered a financial detriment as a result. N.J.S.A. 49:3-71. Here the financial detriment was not suffered by plaintiff until she actually attempted unsuccessfully to obtain the return of the $20,000 invested. According to plaintiff's briefs, she notified defendants on or about July 25, 1978 that she was exercising her right to obtain the return of this sum. Thereafter, she learned that the defendants would not comply with her request. It was only then that she learned of a financial detriment flowing directly to her as an investor.
In Gleason v. United States, 458 F.2d 171 (3 Cir.1972) (applying New Jersey law), plaintiff learned of his exposure to radiation some five years before he filed suit. The court held, however, that the statute of limitations did not bar his negligence suit against his employer as it was not until five years after exposure that plaintiff discovered that he had developed a malignancy as a result.
Accordingly, the court holds that the statute of limitations in N.J.S.A. 49:3-71(e) does not bar plaintiff's suit in the instant case. It was not until sometime after July 25, 1978 that plaintiff discovered she had suffered financial detriment. In view of this holding the issue of equitable estoppel need not be reached.
The final issue to be decided concerns the application of "offensive collateral estoppel." It is plaintiff's contention that the findings of fact prepared by James McLelland Smith, Chief of the Bureau of Securities for the State of New Jersey, establish that ILB and Blaine sold unregistered securities in the *422 form of investment agreements with ILB, such as the one between ILB and Stites, and that it made certain material misstatements and omissions in connection with the offer and sale of these agreements (more properly referred to as "debt securities") which are the same as those alleged in the complaint. Thus, plaintiff argues defendants are collaterally estopped from relitigating these issues in the case at bar, citing Parklane Hosiery v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). That case is substantially on point. Plaintiff in Parklane brought a stockholder's class action in federal District Court alleging that Parklane Hosiery Inc. and several of its officers and directors had issued a materially false and misleading proxy statement in connection with a merger, in violation of the Securities Exchange Act of 1934. The complaint sought damages, rescission of the merger and recovery of costs. Before the action came to trial, the SEC filed suit against the same defendants in federal District Court alleging that the proxy statement that had been issued by Parklane was materially false and misleading in essentially the same respects as those that had been alleged in the class action suit. Injunctive relief was requested. After a four-day trial, the District Court judge found that the proxy statement was materially false and misleading in the respects alleged and entered a declaratory judgment to that effect which was affirmed by the Second Circuit. Plaintiff in the stockholder's suit then moved for partial summary judgment against Parklane, the directors and officers asserting that they were collaterally estopped from relitigating the issues that had been resolved against them in the action brought by the SEC. The issue before the Supreme Court was whether a litigant who was not a party to a prior judgment may nevertheless use that judgment to prevent a defendant from relitigating issues resolved in the earlier proceeding. While upholding the use of offensive collateral estoppel under the facts before it, the court held that the general rule should be that in cases where a plaintiff could easily have joined in the earlier action, or whether for other reasons the application of offensive *423 estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel. Id. S.Ct. 99 at 651-652.
In reaching its decision the court noted that those facts which precluded the application of offensive collateral estoppel on the grounds of unfairness were not present: (1) plaintiff probably could not have joined in the SEC action; (2) defendants had every incentive to litigate the SEC suit fully and vigorously, although the SEC suit was for injunctive relief and the stockholder's suit was for monetary damages, in light of the serious allegations made in the SEC complaint and the foreseeability of subsequent private suits that typically follow a successful government judgment; (3) the SEC judgment was not inconsistent with any previous judgment, and (4) no procedural opportunities were available to defendants in the stockholder's suit which were unavailable in the SEC suit that might be likely to cause a different result.
It is clear that with respect to points (1) through (3) above the use collateral estoppel would not be unfair to defendants in the instant case. Plaintiff and her assignor could not have initiated or joined in the Bureau of Securities hearings except as witnesses. N.J.S.A. 49:3-68. Defendants had every incentive to fully and vigorously litigate the issues raised in the Bureau of Securities hearings as they were notified before the hearings of proposed orders of assessment against them in the amount of $20,000 directed to ILB and $30,000 directed to Blaine. Furthermore, it has not been brought to the court's attention that the Bureau of Securities' findings are inconsistent with any previous judgments against these defendants. See Desmond v. Kramer, 96 N.J. Super. 96 (Cty.Ct. 1976).
Point (4) concerns the availability of procedural opportunities in the present suit which may not have been available to defendants in the case at bar. While Parklane makes clear that in a similar factual situation mutuality of the parties is not required to invoke the doctrine of offensive collateral estoppel, that case is distinguishable in that it involved a prior judicial *424 decision as opposed to findings of fact and conclusion of law by an administrative agency. Following the Supreme Court's decision in United States v. Utah Constr. Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), various federal cases, however, have held that this is not a bar to the application of the doctrine, at least in cases where prior findings of the N.L.R.B. are invoked in subsequent federal court suits for damages where both parties are the same. Consolidated Express Inc. v. New York Shipping, Inc., 452 F. Supp. 1024 (D.N.J. 1978); Paramount Transport Systems v. Chauffeurs, Teamsters and Helpers, 436 F.2d 1064 (9 Cir.1971); and see Hackensack v. Winner, 162 N.J. Super. 1 (App. Div. 1978) (findings of Civil Service Commission precluded relitigation of same issues before Public Employment Relations Commission). Those cases hold that collateral estoppel effect should be given only to those administrative determinations that have been made in a proceeding fully complying with the standards of procedural and substantive due process that attend a valid judgment by a court, and that such effect should be accorded only to those findings on material issues that are supported by substantial evidence in the administrative record as a whole.
By statute the Chief of the Bureau of Securities acts not only as investigator and preliminary finder of facts but as hearing examiner and adjudicator of guilt in proceedings on violations of the Uniform Securities Law. N.J.S.A. 49:3 68 et seq. The Appellate Division has held that this concentration of power does not, without more, violate due process. In re Information Resources, 126 N.J. Super. 42 (App.Div. 1973). An examination of the record of the proceedings conducted by the Bureau Chief against these defendants discloses a thorough investigation and ample evidence to support a finding of misrepresentations and material omissions as well as the issuance of unregistered securities.
With respect to the Bureau's findings dealing with defendants' sale of unregistered securities, the court holds that collateral estoppel bars further litigation of this issue in the instant case.
*425 However, with respect to the allegations concerning material misrepresentations and omissions, a similar result cannot be reached in the absence of a prior determination of these allegations with respect to the plaintiff or her assignor.
Count 4 of the complaint states in pertinent part:
........
2. On or about May, 1976, defendants ILB and Blaine solicited Stites regarding investing money in ILB.
3. It was represented by defendants to Stites that: ILB was a diversified investment firm; that ILB purchased receivables from many industrial corporations; that ILB had lucrative insurance and pension business which paid the expenses for the factoring division; that one-seventh (1/7) of Stites' investment would be placed in trust yearly in a bank in New Jersey to assure full redemption on the prescribed maturity date.
4. Said representations were false and the said representations were made with the knowledge that they were false.
5. Defendants induced Stites to invest in ILB by such false representations, and Stites invested $20,000.00 in ILB in reliance upon said false representations by defendants ILB and Blaine.
6. Defendants failed to provide Stites with accurate financial informations or statements regarding ILB, although they were under a duty to do so.
While it is true that the allegations in the complaint are essentially the same as the Bureau's conclusions, no documents, letters or depositions have been presented by plaintiff which substantiate these claims. Unlike Parklane, this case involves "offering material" rather than a single proxy statement. While the substance of this material is alluded to in the Bureau of Securities' findings, the specific documents referred to therein have not been submitted to this court. The findings indicate that the offering material consisted of applications and letters but noted that in some cases the content of these letters differed. Additionally, defendants raise a factual question in their moving papers as to the source of these misrepresentations with respect to plaintiff's assignor, i.e., denying that same originated from these defendants. In light of the above, it would be unfair to collaterally estop the defendants from litigating the issue in *426 the case at bar. This part of plaintiff's motion for summary judgment is therefore denied.
To summarize: Defendants' motion for summary judgment based upon the statute of limitations is denied without prejudice; plaintiff's motion for summary judgment on the ground of collateral estoppel is granted as to that portion dealing with the sale of unregistered securities in accordance with the provisions of N.J.S.A. 49:3-71(a)(2) and denied as to that portion concerning material misrepresentations and omissions. The case will proceed to trial on that issue.