Richard P. NORDEN,
Plaintiff–Appellant,

v.

William H. FRIEDMAN, Bob W. Bell,
et al., Defendants–Respondents.

No. 70050.

Supreme Court of Missouri,
En Banc.

July 26, 1988.

Rehearing Denied Sept. 13, 1988.

Joseph R. Soraghan, St. Louis, for plaintiff-appellant.

Paul H. Schramm, Clayton, for defendants-respondents.

HIGGINS, Judge.

Richard Norden seeks rescission of a contract to purchase a three-quarter working interest in an oil lease. Following trial to the court, judgment was entered against Norden on Counts I and II of the petition, based on section 409.411(a)(1), RSMo 1986, for failure to register securities, and section 409.411(a)(2), for securities fraud for, inter alia, failure to file the action within the 2–year limitations period, section 409.411(e), RSMo 1986. Judgment was entered against Norden on Count III, based on common law fraud for, inter alia, failure to make a case. Because the judgment against Norden on all three counts was properly entered by the trial court, the judgment is affirmed.

Defendants, Dr. William Friedman and his two sisters, purchased a three-quarter

working interest in an oil lease in Southern Illinois known as the Piper Lease. The Friedman defendants were made aware of the availability of the Piper Lease through defendant Bob Bell, an acquaintance with experience in oil exploration and drilling operations.

The other one-quarter working interest, held by Bob Bell's son as nominee for Bob Bell, was a "carried interest," meaning it was free and clear of all drilling and completion costs with respect to the first well drilled on the Piper Lease, known as Piper 1. Post-completion costs would be divided proportionately between the Friedman defendants and Bob Bell. The Bell interest was given in consideration of Bell's efforts in obtaining the lease, research into potential productivity on the lease and his agreement to arrange and supervise the drilling and completion of Piper 1. Although technical matters were delegated to Bob Bell, the Friedman defendants retained all ultimate authority. Bell was paid a monthly fee separate from the carried interest for daily maintenance and operation of Piper 1.

Piper 1 produced between five and six barrels of oil per day, but the oil was accompanied by a large amount of saltwater. The expense of disposing of the water made Piper 1 commercially unfeasible. Bell proposed drilling a water injection well to accomplish disposal of the unwanted water by recycling it underground. Instead of drilling the injection well, the Friedman defendants decided to cease operations. Bob Bell then had the pumping and storage equipment removed from the Piper site and drilling and production ceased.

Plaintiff Norden, a patient of Dr. Friedman, expressed a desire to enter into the oil business in southern Illinois. Norden stated that his prior experience in the construction business would be an asset because he would get involved in hands-on management; Friedman explained he believed a joint venture between himself and Norden was impractical. Norden then asked if Friedman was interested in selling any of his oil interests. Friedman responded that the three-quarter working interest in the Piper Lease was available. Friedman described the lease and his own understanding of Bell's one-quarter carried interest. He also explained the reason why the lease was not then producing.

After Friedman offered to sell the lease for $60,000, Norden flew to Illinois to view the lease site and meet with Bob Bell. At that meeting Bell explained his understanding of the one-quarter carried interest and his duties as operator of the lease. He agreed to stay on as operator if Norden purchased the Friedman's interest. Bell told Norden that he believed the lease would become more productive if the water injection well were drilled.

While touring the lease cite, Norden noted the absence of pumping and storage equipment; the only external well was a single pipe sticking out of the hole where Piper 1 had been drilled. Norden explained to Bell he intended to enter actively into the oil business in southern Illinois, controlling the operation and development of any oil leases he might acquire.

Norden agreed to purchase the Friedman defendants' three-quarter working interest in the Piper Lease in a telephone conversation with Dr. Friedman February 27 or 28, 1981; payment was deferred to permit Norden to finance the purchase through a lending institution. Norden obtained his loan March 24, and forwarded his check for the purchase price to the Friedman defendants. The Friedman defendants' assignments to Norden of their three-quarter interest in the lease were executed between May 15 and May 18, 1981. These assignments were not registered as securities with the state of Missouri; nor had the Friedman defendants or Bob Bell registered as broker dealers or agents with the state, and thus they were not exempt from registration requirements under section 409.-402(b)(3), RSMo 1986.

The Piper Lease began to produce in June 1981 when, at Norden's direction, four new wells were drilled. Norden decided when and where to drill the wells, which well to convert into the injection well, and he negotiated with the suppliers.

When the wells failed to produce as expected, a dispute arose between Bell and

Norden over amounts owed Bell, and the relationship deteriorated. Bell eventually severed the relationship by selling his one-quarter interest to a third party as part of a package with some of his other lease interests. This litigation ensued, and the trial court entered judgment in favor of Bell and the Friedman defendants.

Appellant Norden contends:

1. the trial court judgment should be reversed and judgment entered for Norden because there is no substantial evidence to support the judgment of dismissal;

2. the lease assignments executed by the Friedman defendants in favor of Norden are "per se" securities according to the plain meaning of the Missouri Uniform Securities Act;

3. even if the assignments are not securities per se, they can be included within the definition of a security as an investment contract because Norden did not have control of the lease interest. Norden claims control, or lack of dependence on the efforts of others, must be in existence at the time of the purchase and such control must be of the type that is significant in nature;

4. the defendants are liable as sellers of unregistered securities;

5. development costs should be included in the measure of damages; and

6. the action was not barred by the 2–year statute of limitations of section 409.411(e), RSMo 1986.

The Missouri Court of Appeals, Eastern District, affirmed the judgment of dismissal on a determination that there had been no violation of the Missouri Securities Act. Plaintiff-appellant, seeking further construction of the Missouri Securities Act, applied for and was granted transfer. It is unnecessary to construe the Missouri Securities Act further because the judgment against Norden would have to be affirmed for the reasons previously indicated.

■ Specifically Counts I and II of plaintiff's cause of action are barred by the 2–year statute of limitations in section 409.-411(e) because this action was commenced on March 23, 1983, more than 2 years after February 27 or 28, 1981, the date of the oral contract whereby plaintiffs agreed to purchase and the Friedman defendants agreed to sell their interest in the Piper Lease. Appellant argues that the trial court erred in finding a binding agreement existed on February 27 or 28, 1981, because the agreement was contingent upon Norden's obtaining financing for the purchase of the Friedman defendants' three-quarter working interest.

Friedman testified he believed he was bound to sell the lease interest for $60,000 following the telephone conversation with Norden on February 27 or 28. Norden testified: "I would say in that telephone conversation we reached an agreement that I would purchase three-quarters of the Piper lease upon his recommendation to leave Mr. Bell in as the operator and as far as making an agreement to make payment I had to borrow the money from the Mark Twain Bank in Harvester, Missouri, and I would notify him at a later date when it would be forwarded." The trial court's finding that a contract existed following the conversation of February 27 or 28, 1981, is thus supported by substantial evidence and must be affirmed. Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Norden claims that the statute of limitations would not begin running on February 27 or 28 because the oral agreement would be in violation of the statute of frauds. Section 432.010, RSMo, the statute of frauds, provides:

No action shall be brought ... upon any contract made for the sale of lands ... or an interest in or concerning them, or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith....

A necessary preliminary determination is whether the statute of frauds is applicable to a lease of an oil interest. The record is

unclear but if the contract was not to be performed within one year it would be within the statute. § 432.010, RSMo 1986; *Aylor v. McInturf,* 184 Mo.App. 691, 171 S.W. 606 (1914). If the oil and gas lease were considered an interest in lands then the statute of frauds would apply. § 432.010, RSMo 1986. Some jurisdictions, however, regard an oil and gas lease as a mere chattel interest and not within the statute of frauds. *See, e.g., Walla Walla Oil, Gas & Pipe Line Co. v. Vallentine,* 103 Wash. 359, 174 P. 980 (1918). Research indicates no Missouri case in point, but the majority rule holds oil and gas leases are an interest in lands and thus within the statute. 37 C.J.S. Frauds, Statute of, § 112(c) (1943). Additional authority for holding these lease assignments to be within the statute of frauds can be found in section 432.060, RSMo 1986, wherein it states:

> No lease, estates, interest, either of freehold or term of years, or any uncertain interest of, in, to or out of ... any lands, ... shall at any time hereafter be assigned, granted or surrendered unless it be by deed or note in writing, signed by the party so assigning, granting or surrendering....

A literal interpretation of section 432.060 or section 432.010 would lead to the conclusion that an oil lease is within the statute of frauds.

■ If it is assumed the statute of frauds requires lease assignments to be in writing then the question arises whether the statute of limitations does not begin to run until a writing exists. Under Missouri law the answer must be in the negative because Missouri courts have held that the statute does not render a contract void, but voidable, and therefore relates only to the remedy. *Brooks v. Cooksey,* 427 S.W.2d, 498 (Mo.1968). Thus, the oral agreement is valid for all other purposes and would commence the running of the statute of limitations. The language in *Thies v. St. Louis County,* 402 S.W.2d 376 (Mo.1966), stating that an oral agreement, required to be in writing pursuant to section 432.070, RSMo 1986, was void ab initio applies only to contracts with counties, towns and other entities specified in section 432.070.

■ Appellant's statute of frauds contention also fails because such defense has been waived. *Leeson v. Etchison,* 650 S.W.2d 681 (Mo.App.1983). Appellant's failure to raise his statute of frauds defense in the pleadings or at trial by objecting to testimony regarding the oral contract constitutes a waiver. *Id.*

Appellant claims *Leeson* is distinguishable because the party raising the statute of frauds was made aware that an oral contract was being claimed. In this case appellant argues there was no pleading or argument against which to plead the statute of frauds affirmatively or otherwise, or to object to the testimony relating thereto. Appellant relies on *Thies,* 402 S.W.2d 376, where it was held that if the plaintiff failed to plead the existence and then breach of a collateral oral agreement as the basis of rescinding the contract and plaintiff is allowed to rely upon such agreement, then the defendant is entitled to call attention to the statute of frauds.

*Thies* is not controlling in this case because the statute of limitations defense was raised in the pleadings and Dr. Friedman testified, without objection, to every detail of the oral agreement. Dr. Friedman did not say the words "oral contract," but he did testify he thought he was bound by the agreement reached in the telephone conversation of February 27 or 28, and this is sufficient to obligate defendant to raise his statute of frauds defense.

*Thies* is also distinguishable because it involved a deed with an alleged collateral oral agreement by the County not to purchase other property for a higher price per foot than was paid plaintiff. The defendant may not have been aware of the alleged oral agreement because it was collateral to the contract and not specifically raised in the pleadings. Thus the court's reaction is understandable in light of these circumstances. In this case the oral agreement is not collateral but is the contract, and its details were presented at trial. Appellant was aware of the alleged oral agreement and was obligated to raise the

statute of frauds. *Campbell v. Dixon*, 647 S.W.2d 617 (Mo.App.1983); *Leeson*, 650 S.W.2d 681.

Appellant argues the statute of limitations should not begin to run until appellant knew or, in the exercise of reasonable diligence, should have known of a breach of duty owed him by the respondent and knew or, in the exercise of reasonable diligence, should have known that he had suffered an injury as a result of that breach, citing *McIntyre v. ILB Inv. Corp.*, 172 N.J.Super. 415, 412 A.2d 810 (N.J.Super.1979). *McIntyre* applied the "discovery rule" from tort law to the New Jersey statute of limitations applicable to securities cases. The language in the New Jersey statute is identical to section 409.411(e).

Section 409.411(e), however, states "no person may sue under this section more than 2 years after the contract of sale." There is no reason to read a discovery rule into the plain language of this statute. Furthermore, where a statute of limitations is a special one and not included in the general chapter on limitations, as in this case, its running cannot be tolled because of fraud, concealment, or any other reason not provided in the statute itself. *Clodfelter v. Thuston*, 637 F.Supp. 1034, 1038 (E.D.Mo.1986), *citing State ex rel. Bier v. Bigger*, 352 Mo. 502, 178 S.W.2d 347, 350 (Mo. banc 1944). In *Frazee v. Partney*, 314 S.W.2d 915, 919 (Mo.1958), this Court ruled: "A special statute of limitations must carry its own exceptions and we may not engraft others upon it." Thus the 2–year statute of limitations is not tolled by fraud, as in *McIntyre* and the federal securities fraud cases.

Appellant also claims the parol evidence rule nullifies defendant's oral evidence. The parol evidence rule precludes oral evidence used to vary or contradict the terms of an unambiguous and complete written instrument absent fraud, common mistake, accident or erroneous omission. *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316 (Mo. banc 1979). However, "[a]s a general rule it is admissible to show by parol the true date of an instrument, even though such evidence may tend to vary the

writing, or to supply the date when it is omitted, since the date is not generally such an important element of the agreement that the reason of the rule against parol evidence applies thereto...." *Cosby v. Harding*, 553 S.W.2d 535, 537 (Mo.App. 1977). This is true even as to instruments that are required by statute to be in writing. *Olsen v. Reese*, 114 Utah 411, 200 P.2d 733 (1948).

On the other hand, the rule against parol evidence that varies or contradicts written agreements precludes such evidence varying the date on an agreement when it is a vital part thereof. 30 Am.Jur. 2d Evidence, § 1039 (1967). Such a case arises when a written agreement specified a date on which a promissory note becomes payable. *Grand Junction Gospel Tabernacle v. Orvis*, 113 Colo. 408, 157 P.2d 619 (1945).

In this case the date of the agreement is not a vital part of the contract and the parol evidence rule would not bar the parol evidence. In any event the trial court chose to believe respondent's testimony regarding the date of the agreement. Thus the trial court must have believed the date of the written contract, if any, was mistaken. Parol evidence is generally admissible to show that by reason of mistake the written instrument does not truly express the party's intentions. *Dickson v. Maddox*, 330 Mo. 51, 48 S.W.2d 873 (1932). It also appears there was no unambiguous, complete, written instrument and the parol evidence rule may not have come into play. Thus there were several bases for the trial court to admit the parol evidence in this case.

As the foregoing demonstrates, the 2–year statute of limitations in section 409.411(e) is applicable to Count I (failure to register a security) and Count II (misrepresentation in the sale of a security), and Counts I and II are thus barred.

The trial court held that Count III, based on common law misrepresentation, was also barred by section 409.411(e). Neither respondents nor the trial court, how-

ever, cite authority or offer an explanation for such a holding. Section 409.411(e) specifically limits its application to suits "under this section." The plain meaning of section 409.411(e) is that it is inapplicable to common law causes of action. Common law fraud actions are normally controlled by the 5–year statute of limitations in section 516.120(5), RSMo 1986, which specifically states it is applicable to "an action for relief on the ground of fraud." Thus the 5–year limitation period is applicable to Count III.

■ Nevertheless, even if timely filed, the trial court's judgment against Norden for failure to make a case on Count III, the fraud count, must be affirmed. The elements of a cause of action for a common law fraud are: false material representations; defendant's knowledge of its falsity or ignorance of its truth; defendant's intent that it be acted upon by plaintiff in a manner reasonably contemplated; plaintiff's ignorance of falsity of the statement; plaintiff's rightful reliance on its truth and right to rely thereon; and proximate injury. *Benson v. Geller*, 619 S.W.2d 947 (Mo. App.1981).

■ The specific misrepresentations alleged by Norden are:

A. that the Piper #1 well was producing five barrels of oil per day;

B. that the Piper #1 well would produce more oil if the lease were appropriately managed, additional wells drilled and secondary methods utilized;

C. that Bell represented he would continue to own an interest in the Piper Lease and act as driller and operator of the Piper Lease; and

D. that Bell represented that he would drill, complete and equip wells for Norden "at cost."

The trial court found that representations designated A, C and D above were not made. The representations that were made failed to make a cause of action because:

1. the representations were true;

2. any material information known by defendants was disclosed to Norden; and

3. Norden did not rely on the representations of the defendant, but instead conducted his own inspection of the lease and investigation of the purchase thereof.

The facts as found by the trial court were:

A. the Friedman defendants did not quantify to Norden the amount of oil produced by Piper 1 or the amount that the lease would produce if appropriately managed. Bell told the Friedman defendants he believed the well would produce more oil if the injection well were drilled, and this information was relayed to Norden. Bell confirmed this during his meeting with Norden. The representation that the Piper Lease would be more productive if additional wells were drilled proved true; the lease produced more than five to six barrels per day;

B. Norden, from his inspection of the Piper Lease site, knew that Piper 1 was not producing oil. He thus could not have relied on any statements that Piper 1 was producing oil;

C. Bell at no time represented to Norden that he would continue to own an interest in the Piper Lease; he offered only to act as driller and operator of the Piper Lease upon mutually agreeable terms; and

D. Bell did not represent to Norden at any time that he would drill, complete and equip wells on the Piper lease "at cost." Furthermore, there was no evidence presented as to the cost basis for Bell's charges to Norden and thus no basis for holding that Norden was not in fact charged "at cost."

Under Rule 73.01 and *Murphy*, the judgment of dismissal on Count III must be affirmed because there is substantial evidence in the record to support the trial court's findings and conclusions, the judgment is not against the weight of the evidence, and the trial court did not erroneously declare or apply the law.

Accordingly, the judgment is affirmed.

BILLINGS, C.J., and BLACKMAR and ROBERTSON, JJ., concur.

DONNELLY, J., concurs in result in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of WELLIVER, J.

DONNELLY, Judge, concurring in result.

The teaching of *Landreth Timber Company v. Landreth*, 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985), is that if an instrument bears the label "stock" and possesses the characteristics usually associated with common stock a purchaser may assume that the federal securities laws apply; but that in a case involving an instrument not easily characterized as a "security" the Court will look to whether the transaction "involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Securities and Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946).

I am persuaded that the *Howey* test should be followed in this case and that Norden was an active participant in the common enterprise. Chapter 409, RSMo 1986, does not apply.

I concur in the result.

WELLIVER, Judge, dissenting.

I respectfully dissent.

Counts I and II are not based on a suit for rescission in the usual sense of the word, but rather are counts for money damages after tender back of the security pursuant to § 409.402 and § 409.411, RSMo 1986. These two counts are pleaded in almost the exact words of the securities law. Count III pleads common law fraudulent misrepresentations and does seek common law rescission.

Both Counts I and II state causes of action under the security law, because the three-fourths fractional interest in the oil and gas lease is a "security" under the Missouri Securities Act.

In *Carney v. Hanson Oil Co., Inc.*, 690 S.W.2d 404 (Mo. banc 1985), this Court held:

Section 409.301, RSMo 1978, of the Missouri Securities Act requires that securities be registered to be offered or sold in this state unless they are exempted under § 409.402. *Oil and gas interests are securities within the meaning of the Missouri Act.* § 409.401(1), RSMo 1978. Section 409.402(b) exempts certain specified transactions from the registration requirements with the following exception: *"no transaction in a certificate of interest or participation, including a limited partnership interest, in an oil, gas or mining title or lease, or in payments out of production or under such a title or lease shall be so exempted."*

. . . .

The particular issue before us is whether § 409.402(b) meets the rational basis test in excluding oil and gas interests from the exemptions provided therein, while retaining them in the larger class of those required to register under § 409.301. The nature of oil, gas and mining interests has been recognized to present particular possibilities for fraud or participation by unsophisticated investors. *See generally* Watson, Federal and State Regulation of Oil and Gas Interests, 28th Inst. on Oil & Gas 245 (1977). This has been true since the period between the Civil War and the enactment of the first blue sky law in Kansas in 1911, "when securities promoters and salesmen peddled mining and oil stocks of many worthless companies to unsophisticated purchasers." J. Mofsky, Blue Sky Restrictions on New Business Promotions 9–10 (1971). The Commissioner of Securities, in his *amicus curiae* brief, stated that his office has more enforcement actions concerning oil and gas interests and more criminal prosecutions of promoters of those interests than in any other single area in his jurisdiction. It is apparent that the high risk involved in oil and gas securities creates a special need for registration to inform

and thereby protect the investing public. *Cf. Florida Realty, Inc. v. Kirkpatrick,* 509 S.W.2d 114, 119 (Mo.1974) (upholding deferred payment sales, but not cash sales, of land as securities against equal protection challenge). Foreign securities are treated no differently from domestic ones with respect to registration. Other states, including Oklahoma, California and Kansas, also single out oil, gas and mining interests for explicit and different exemption requirements. Okla.Stat.Ann. tit. 71, § 401(15) (West Supp.1984); Cal. Corp. Code § 25102(j) (West Supp.1984); Kan.Stat.Ann. § 17–1262(a) (Supp.1983). The classification meets the rational basis test.

*Carney v. Hanson Oil Co., Inc.,* 690 S.W. 2d 404, 407–08 (Mo. banc 1985) (emphasis added).

The question then is the applicable statute of limitations. Section 409.411, RSMo 1986, provides

(e) No person may sue under this section more than two years after the contract of sale ...

....

(h) The rights and remedies provided by this act are in addition to any other rights or remedies that may exist at law or in equity, ...

Section 409.411(e)(h), RSMo 1986.

*Sohn v. Show Petroleum Inc.,* 581 F.Supp. 23 (E.D.Mo.1984) in construing this section stated:

Section 409.411(e), however, contains the language "[n]o person may sue under this section more than two years after the contract of sale." The date of the contract of sale is the date when the seller becomes obligated to convey the securities. *Frizzell v. Stewart Lumber Co.,* 329 Mo. 376, 44 S.W.2d 615, 617 (1931).

*Sohn v. Show Petroleum Inc.,* 581 F.Supp. 23, 25 (E.D.Mo.1984).

The principal opinion would treat the trial court's finding that the contract was orally consummated February 27–28, 1981 by telephone as a factual finding of the effective date of the contract while I believe that statement to be a finding or conclusion of law which has no binding effect on this Court. Appellant obtained financing March 24, 1981 and thereafter forwarded his check to respondents. Prior to this there was no writing of any kind reflecting the agreement to assign the oil lease. I do not think it can be argued that between February 27–28 and March 24 respondents had an enforceable right to recover the purchase price from appellant or that appellant could have had specific performance of an agreement to assign the lease prior to appellant obtaining and notifying respondents that he had obtained his financing commitment. This suit was instituted March 23, 1983.

The real estate law of this state has long been well settled. It is common in real estate contracts to make the sale contingent upon a buyer obtaining the appropriate financing. "It is held in Missouri that a provision in a real estate sales contract making the contract contingent upon the buyer's obtaining financing creates a condition subsequent. Upon the nonoccurrence of the condition (i.e. the buyer's obtaining financing), the buyer is ipso facto excused from performance." *Koontz v. Lee,* 737 S.W.2d 766, 768 (Mo.App.1987). *See also Berger v. McBride & Son Builders, Inc.,* 447 S.W.2d 18, 19 (Mo.App.1969). "A financing contingency in a real estate contract is a condition subsequent, not a condition precedent, which may be raised, if not fulfilled, to void the contract." *Flores v. Baker,* 678 S.W.2d 884, 886–87 (Mo.App. 1984). In effect, the buyer and seller have no sale until the buyer obtains financing. As a matter of law appellant and respondents had no sale of the fractional oil lease until appellant obtained and notified respondents of his financing. The suit herein was filed and instituted one day short of the statutorily provided two year statute of limitations.

The cause should be remanded with directions to set aside the dismissal of Counts I and II and further proceedings consistent with this dissenting opinion. Plaintiff-appellant's pleadings entitle him

to his day in court. I find no reason to reach Count III on this appeal.